34    31
72    95

H. H. Dircks, Appellant, v. The German Insurance Company of Freeport, Illinois, Respondent.

### Kansas City Court of Appeals, February 4, 1889.

1. **Insurance**: STIPULATION IN POLICY AND PREMIUM NOTE AS TO FORFEITURE ON DEFAULT IN PAYMENT. A premium note contained this stipulation :—" If this note is not paid at maturity, said policy shall then cease and determine, and be null and void and so remain until the same shall be fully paid," etc., and the policy itself contained similar provisions, and a loss occurred after said note matured and while it was unpaid. *Held*, the assured cannot maintain an action on said policy.

2. —— : ACKNOWLEDGMENT OF THE RECEIPT OF PREMIUM : ESTOPPEL. These words in the policy :—" The German Insurance Company by this policy of insurance, in consideration of $38.50, do insure," etc., do not amount to an acknowledgment of the receipt of the premium, especially when the note and policy are construed as one instrument, as they must be ; and if they did, the insurer would not be estopped to explain or contradict such receipt.

3. —— : PAROL EVIDENCE TO VARY : STIPULATION IN POLICY : PRINCIPAL AND AGENT. The result of such default in payment and consequent forfeiture cannot be avoided by parol evidence of a contemporaneous agreement between the assured and the agent of the insurer, that the policy was to be " a cash policy," and that the agent would make the premium good to the insurer ; as such agreement could only bind the agent and not his principal, would serve to vary the written contract and was prohibited by the provision in policy " that the company shall not be bound by any act or statement made to or by the agent unless inserted in this contract."

4. ———: RIGHTS OF ASSURED AS ASSIGNEE OF MORTGAGEE'S INTEREST : ESTOPPEL : PRINCIPAL AND AGENT. The policy was endorsed payable to the mortgagee as his interest may appear ; his interest was greater than the amount of the policy ; and the insurer's agent at the time of the issuance of the policy had represented to the mortgagee that it was "a cash policy," and after the loss the mortgagee, upon payment of his debt by assured, had released and assigned all claims on the policy to the assured, *held*, the insurer was not estopped from asserting the trust as between it and the assured, and after the mortgagee's release, the matter stood as though no such endorsement was ever made on the policy.

*Appeal from the Carroll Circuit Court.*—HON. J. M. DAVIS, Judge.

AFFIRMED.

*J. M. Blankenship* and *Hale & Sons*, for appellant.

(1) Was there a conflict in the evidence upon any material point in the case ? If so, the cause must be reversed. *Covey v. Railroad*, 86 Mo. 635 ; *Meyer v. Broadwell,* 83 Mo. 671. There was evidence tending to prove plaintiff's theory of the case, and the cause should have been submitted to the jury. *Baum v. Fryrear*, 85 Mo. 151 ; *Groll v. Tower*, 85 Mo. 249 ; *Moody v. Deutch*, 85 Mo. 237 ; *Sage v. Reeves*, 17 Mo. App. 210 ; *Van Every v. Flanders*, 17 Mo. App. 240 ; *Smith v. Hutchison*, 83 Mo. 683 ; *Walsh v. Moore*, 80 Mo. 568 ; *Clotworthy v. Railroad*, 80 Mo. 220 ; *Kelly v. Railroad*, 70 Mo. 604 ; *Hazell v. Bank*, 95 Mo. 60 ; *Hipsley v. Railroad*, 88 Mo. 348. (2) The policy acknowledged receipt of the premium, and defendant is estopped from contradicting it, even though it had not been paid in fact. *Headgrove v. Ins. Co.*, 5 Cranch, 100 ; *Hemminway v. Bradford*, 14 Mass. 121 ; *Ins. Co. v. Fennell*, 49 Ill. 180 ; *Ins. Co. v. Ins. Co.*, 20 Barb. 468 ; *Basch v. Ins. Co.*, 35 N. J. 429 ; *Ins. Co. v. Fellowes*, 1 Disney 217 ; *Ins. Co. v. Cashow*, 41 Md. 59 ; *Gate v. Ins. Co.*, 25

Barb. 189; *Ins. Co. v. Walf*, 37 Ill. 354. In the last case a note was executed for the premium, held it could not be proven. *Ins. Co. v. Carpenter*, 4 Mo. 20 ; *Michael v. Ins. Co.*, 10 La. An. 737 ; *Dalsell v. Mair*, 1 Camp. 532 ; *De Gaminde v. Pijon*, 4 Taunt. 246 ; *Anderson v. Thornton*, 8 Exch'r. 425; *Sheldon v. Ins. Co.*, 26 N. Y. 460 ; *Ins. Co. v. Gilman*, 10 W. Rep. 843. (3) The acts of Glick were the acts of the company. *Day v. Ins. Co.*, 88 Mo. 325 ; *Breckenridge v. Ins. Co.*, 87 Mo. 62 ; *Baile v. Ins. Co.*, 20 Mo. App. 150 ; *Gentry v. Ins. Co.*, 15 Mo. App. 215 ; *Franklin v. Ins. Co.*, 42 Mo. 456 ; *Balchain v. Ins. Co.*, 56 Mo. 151 ; *Jackson v. Ins. Co.*, 27 Mo. App. 62. And where credit is given (as in this case) the policy is valid and binding, though the premium is never paid. *Balchain v. Ins. Co., supra* ; *Miller v. Ins. Co.*, 12 Wall. 285 ; *Ins. Co. v. Calt*, 20 Wall. 560 ; *Heaton v. Ins. Co.*, 7 R. I. 502 ; *Sheldon v. Ins. Co.*, 25 Conn. 207 ; *Ins. Co. v. Kelly*, 24 Ohio St. 345; *Gait v. Ins. Co.*, 25 Barb. 189 ; *Boehen v. Ins. Co.*, 35 N. Y. 131 ; *Ins. Co. v. Neyland*, 9 Bush, 430 ; *Lunnant v. Ins. Co.*, 31 Fed. Rep. 322 ; *Ins. Co. v. China, supra ; Young v. Ins. Co.*, 45 Iowa, 377 ; *Hopkins v. Ins. Co.*, 57 Iowa, 203 ; *Sheldon v. Ins. Co., supra ; Ins. Co. v. Gilman, supra*. (4) If at the time the policy was issued, Glick said to Blankenship that " the policy in question was a cash policy with the premium fully paid up," the defendant would be estopped from denying that it was not a cash policy with premium fully paid up. *Rice v. Graffen*, 56 Mo. 434 ; *Hayward Ass'n v. Ins. Co.*, 52 Mo. 181 ; *Bales v. Perry*, 51 Mo. 449 ; *Savings Ass'n v. Kehlar*, 7 Mo. App. 158 ; *Farley v. Pettes*, 5 Mo. App. 262 ; *Garnhart v. Finney*, 40 Mo. 449 ; *Chouteau v. Godden*, 39 Mo. 229 ; *Franklin v. Ins. Co.*, 42 Mo. 456 ; *Miller v. Anderson*, 19 Mo. App. 71 ; *Thomas v. Ins. Co.*, 20 Mo. App. 151 ; *Weire v. Moore*, 22 Mo. App. 530 ; *Breckenridge v. Ins. Co.*, 87 Mo. 62, and cases cited.

*G. W. Barnett*, for respondent.

(1) Failure to pay the premium note when due avoids the policy, so that the company is not liable for loss occurring during the time the premium note remains past due and unpaid. *Barnes v. Ins. Co.*, 30 Mo. App. 239; *Gateman v. Ins. Co.*, 1 Mo. App. 300; *Russum v. Ins. Co.*, 1 Mo. App. 229; *Moser v. Ins. Co.*, 2 Mo. App. 408; *Ashbrook v. Ins. Co.*, 94 Mo. 72; *Ins. Co. v. Klink*, 65 Mo. 78; *Greenwood v. Life Ass'n*, 27 Mo. App. 401; *Thompson v. Ins. Co.*, 104 U. S. 252; *Ins. Co. v. Mowry*, 96 U. S. 544; *Wall v. Ins. Co.*, 36 N. Y. 157; *Baker v. Ins. Co.*, 43 N. Y. 283; *Buffum v. Ins. Co.*, 3 Allen, 360; *Pitt v. Ins. Co.*, 100 Mass. 500; *Ins. Co. v. Daly*, 33 Kan. 601; *McIntyre v. Ins. Co.*, 52 Mich. 188; *Ferebu v. Ins. Co.*, 68 N. C. 11; *Catoir v. Ins. Co.*, 33 N. J. [Law] 487. (*a*) The testimony of plaintiff that Glick, the agent, said when the policy was issued, in case plaintiff could not pay the premium note when due, he would make it good to the company, and the testimony of Blankenship that he, Blankenship, knew that a note was given for the premium, but that he understood the policy would be good in case of loss, is an attempt to vary the terms of the written contract by a cotemporaneous verbal agreement, and such testimony was therefore incompetent. *Greenwood v. Ins. Co.*, 27 Mo. App. 401; *Barnes v. Ins. Co.*, 30 Mo. App. 539; *Messehorn v. Life Ass'n*, 30 Mo. App. 589; *Thompson v. Ins. Co.*, 104 U. S. 252; *Ins. Co. v. Mowry*, 96 U. S. 544; *Hoffman v. Ins. Co.*, 92 U. S. 161; *Buffman v. Ins. Co.*, 3 Allen, 360; *Catoir v. Ins. Co.*, 33 N. J. 487; *Ins. Co. v. McWhaiton*, 11 Ins. Law. Jour. 147. (*b*) The alleged agreement is beyond the scope of the agent's authority, and especially is this so in this case, because the policy contains the provision that? "The company shall not be bound by any act or statement made to or by any agent unless inserted in this

contract." *Buffum v. Ins. Co.*, 3 Allen, 360 ; *Barnes v. Ins. Co.*, 30 Mo. App. 539, and authorities there cited ; *Greenwood v. Life Ins. Co.*, 27 Mo. App. 401 ; *Ins. Co. v. Fletcher*, 117 U. S. 519 ; *Catoir v. Ins. Co.*, 33 N. J. 487 ; *Hale v. Ins. Co.*, 6 Gray, 169 ; *Cleaver v. Ins. Co.*, [Mich.] 8 W. Rep. 815 ; *Merrean v. Ins. Co.*, 66 N. Y. 275 ; *Hoffman v. Ins. Co.*, 92 U. S. 161. (2) The acknowledgment in the policy of the receipt of the premium is not conclusive as to the mode of payment, and does not estop the company from showing that a note was given. The policy, note and application are all parts of the same transaction and should be construed together as one instrument. *Barnes v. Ins. Co.*, 30 Mo. App. 547, 548 ; *Baker v. Ins. Co.*, 43 N. Y. 283 ; *Sheldon v. Ins. Co.*, 26 N. Y. 460 ; *Ins. Co. v. Smith*, 3 Wharton, 520. Dircks does not hold as assignee of Leonard, but he is the original party insured. If Leonard's interest still existed, and he was the party plaintiff, his action would be defeated on account of Dirck's failure to pay the premium. *Hale v. Ins. Co.*, 6 Gray, 169 ; *Fog v. Ins. Co.*, 10 Cush. 346 ; 2 Wood on Insurance, 1122, 1123 ; *Martin v. Ins. Co.*, 33 N. J. [ Law ] 140. The right of the mortgagee is liable to be defeated by the acts of the mortgagor. *Bates v. Ins. Co.*, 10 Wall. 33 ; *Ins. Co. v. Ins. Co.*, 119 Mass. 240 ; *Foote v. Ins. Co.*, 119 Mass. 259 ; *Sias v. Ins. Co.*, 9 Ins. Law Jour. 154.

GILL, J.—This is an action by the appellant against the respondent on an insurance policy made at Carrollton, Missouri, December 19, 1885. The policy was made to cover a barn, grain, farming implements, etc., belonging to the appellant, the respondent agreeing with the appellant Dircks to insure him thereon for the space of five years in the aggregate sum of twenty-two hundred dollars. On the face of the policy was written, "Loss, if any, payable to William F. Leonard, mortgagee, or his assigns, as mortgagee's interest may appear." About

the last days of October, or first days of November, 1886, a portion of the property so insured, alleged by the plaintiff appellant to be of the value of about eleven hundred dollars, was destroyed by fire. After the fire and before this suit, Leonard, upon payment by Dircks of the mortgage debt, released and assigned all claim on the policy to the appellant Dircks. Very shortly after the fire Dircks gave notice of the loss to the insurance company (respondent) and in pursuance thereof its adjuster came upon the ground, and upon an investigation the company refused to pay, putting its refusal on the ground that the insured Dircks was in default in the payment of the premium agreed to be paid. It seems the insured was not prepared to pay ( or at least did not pay ) the premium at the issuance of the policy, but instead thereof gave his note in words and figures as follows :

" On or before the first day of October, 1886, for value received, I promise to pay to the German Insurance Company, or bearer, at Carroll Exchange Bank, Carrollton, Missouri, the sum of forty-one dollars, in payment of premium on policy No. 10,131 of said company, and reasonable attorney's fees if collected by an attorney, or by suit. If this note is not paid at maturity said policy shall then cease and determine, and be null and void, and so remain until the same shall be fully paid and received by said company, as provided in said policy. In case of loss under said policy, this note shall immediately become due and payable, and shall be deducted from the amount of said loss. If this note be paid thirty days prior to maturity all interest shall be waived. It is understood and agreed that this note is not negotiable. Dated at Carrollton, this nineteenth day of December, 1885.

( Signed. )                    "HENRY H. DIRCKS.

" P. O. Address, Bogard, Carroll county, Missouri."

On the back of the note appears the following indorsement :

"Received on within, sixteen dollars and twenty cents, being return premium on policy No. 223.

(Signed.)                    "A. M. GLICK & SON.

"December 19, 1885."

It may be as well to state here that Mr. Glick was the agent of the insurance company, respondent, in making the insurance referred to, and that the credit of sixteen dollars and twenty cents endorsed was the amount of unearned premium on a policy of the respondent theretofore held by Dircks on the same property, and which was then surrendered up and the unearned premium credited on the obligation for the premium on the new policy.

There seems no question but that three or four weeks before the fire the note for the premium above set out matured ; that demand of payment was made on the appellant and that he failed to pay.  He did, however, offer to pay the same very shortly after the fire, but the respondent refused and claimed a forfeiture of appellant's rights under the policy because of the default.

The cause went to trial on the petition, answer and reply.

At the conclusion of plaintiff's evidence the defendant demurred, but the court required the defendant to proceed, withholding any action on the demurrer until all the evidence was in both for the plaintiff and the defendant and at the conclusion of the entire evidence the court gave an instruction that the plaintiff could not recover, whereupon the plaintiff took a non-suit with leave to move to set the same aside, which motion was made in due time, overruled by the court and now the case is here on appeal by the plaintiff.

I.   Errors are complained of in the court's action in striking out parts of the reply of the plaintiff and in failing, on motion, to strike out part of defendant's answer, but it is unnecessary to notice these since the

plaintiff, while on the stand as a witness, was permitted to detail the entire transaction and to adduce evidence covering the allegations of his reply stricken out by the court, so that the entire case can now be determined in passing on the question as to whether or not the trial court was correct in sustaining the demurrer to the entire evidence thereby forcing plaintiff to an involuntary non-suit.

In testing the propriety of the court's action in sustaining the demurrer to the evidence the question occurs, was there any evidence at all at the trial, taken together with the admitted facts, upon which the jury could have found a verdict for the plaintiff?

The insurance company places its defense upon the terms of the written agreements between it and plaintiff Dircks contained in the policy and premium note, all made and entered into December 19, 1885, and are to be considered together as one entire transaction. As already seen the note which Dircks gave for the premium, and which was past due and unpaid at the date of the loss, expressly provided : " If this note is not paid at maturity said policy shall cease and determine, and be null and void, " etc.

In the contract of insurance occurs this stipulation, to-wit : " When a promissory note is given by the assured for the premium, it shall be considered a payment, provided such note is paid at or before maturity, but it is expressly understood and agreed by and between the parties hereto, that should any loss or damage occur to the property hereby insured and the note given for the premium past due and unpaid, in whole or in part, at the time of such loss or damage, then this policy shall be void."

Besides in the clause obligating the company to make good the loss to the assured there is *excepted* " such portions of the above mentioned period of time as the company shall hold against the insured any promissory

note past due and unpaid, in whole or in part, given by the insured for the premium charged for this policy or any part thereof, and during such portion of the time this policy shall be null and void and so continue until such promissory note is fully paid," etc. These quoted stipulations from the policy and premium note contain all the written evidence that was offered on this subject. At the trial plaintiff offered the following oral evidence whereby it was intended to avoid the effect of these written provisions.

H. H. Dircks, plaintiff, after stating his relation to the suit, making application for the insurance, etc., testified as follows :

"I told Mr. Glick I wanted a cash policy of insurance for the benefit of Wm. F. Leonard in the sum of eleven hundred dollars for the term of five years upon the property described in the policy on suit and told him that I did not have the money to pay the premium. He said that was all right, that he would cancel the old policy and credit me with the unearned premium and take my note for the premium and credit it with the unearned premium, and he agreed that in case I could not pay it when due he would make good to the company the premium in case of loss, agreeing also to retain the note in his possession. I agreed to give the note for the insurance. I told Glick I could not pay cash for the insurance. I wanted to make the note payable to Glick, but he said it would better satisfy the company to be made to the company. I signed the note knowing it was made payable to the company. I knew it was to go to the company. The note was read over to me. I can read and write." Again he testified : " At the time of loss I owed Wm. F. Leonard thirty-five hundred dollars, secured by trust deed on real estate on which insured property is situated, but have since paid the debt and Leonard has assigned his interest in the policy to me. I am the sole owner of the insurance policy, Leonard

has no further interest. After the fire, Glick, the agent of the company at Carrollton, offered to return me the note and demanded the policy. I refused to take the note when offered me. I refer to the note given for the premium of insurance."

(Here note was shown plaintiff.) He said:

"Yes, it is my signature; this is the note. It was not paid when fire occurred and was past due at that time. I got notice from the Carroll Exchange Bank, which held the note for collection, that it was past due, and to call and pay it. Received this notice from the bank two or three days before the fire occurred. The making the application for the insurance, the giving of the note for the insurance and the issuance of the insurance policy were all the same day and were all parts of the same business transaction."

J. M. Blankenship for plaintiff testified as follows:

"I acted as agent for Dircks and Leonard in procuring the insurance in question. Dircks and Glick came to my office to talk about the insurance and I told Glick that we were loaning Dircks money on the property insured and would not make the loan except upon a cash policy, with the premium fully paid up. Glick replied that was all right, it was a cash policy, that he and Dircks had arranged the matter between themselves and thereupon the policy was issued and delivered to me on the forenoon of that day, as agent for Leonard who was making the loan. What I was interested in was getting the policy so that Leonard would be protected in case of loss under the policy. After loss under policy I notified defendant for plaintiff of the loss and in a short while afterwards the defendant's agent came out to adjust the loss and denied the liability of the company because premium note had not been paid. I am now acting as one of the attorneys for Mr. Dircks in this case. Am an attorney at law. I understood at the time the policy was issued that the premium had not been paid,

but understood the policy to be valid in case of loss. I got this understanding from Glick."

Several other witnesses were examined, among them Mr. Glick, the agent, who denied any promise to Dircks to account to the company for the premium in case of default by Dircks ; also Mr. Rea, cashier of the Carroll Exchange Bank, that his bank had Dircks' note for more than a month before the fire and made unsuccessful attempts to collect the same, etc. But all this has no bearing on the point now discussed.

The point is, admitting the truth of Dircks' evidence that he had such a talk with the agent Glick when the policy was issued and the note executed, can it be admitted and be effective to save Dircks' rights under the policy from forfeiture ? It is clear that if this controversy is to be determined by the written agreements evidenced by the policy and premium note, then Dircks, by making default in the payment of said note, lost all claim on the respondent for indemnity for his loss.

Appellant claims that the policy acknowledged receipt of the premium and that the respondent is estopped thereby from contradicting it, even though it had not in fact been paid. In answer to this contention it is only necessary to look to the terms of engagement made on December 19, 1885, the policy itself and the premium note which is to be considered along with the policy, and it will be seen that by no fair construction can it be rightly held that there is an acknowledgment of receipt of the premium. Indeed just the reverse is shown to be true. It appears by the policy and the note that the premium was not paid and that time was given for such payment. The policy, it is true, does recite these words : "The German Insurance Company by the policy of insurance, *in consideration of* $38.50, do insure Henry H. Dircks against loss, " etc. It does not acknowledge receipt of that amount, indeed is silent thus far as to whether " paid in hand " or agreed to be paid.

However the policy does refer to an agreement as to the consequences of non-payment of a premium note and the note itself made at the time, and which is to be considered along with the policy, expressly stipulates for the payment of the premium at a future time.

So that it is clear from the face of the written agreements, then and there entered into, that it was not a cash transaction, but the issuing a policy in consideration of a premium to be paid at a future time. But even were the terms of the policy to be construed as a receipt of the premium "in hand paid" it would seem that the defendant might explain such receipt by showing that the payment was not in money but by a note, and that default had been made in the payment thereof which defeated plaintiff's right to indemnity under the policy. This assertion is made in face of the authorities cited by appellant's counsel from the states of Illinois, New Jersey, etc. See 35 N. J. 429 ; 37 Ill. 354 ; 49 Ill. 180, etc.

But see *contra*, *Sheldon v. Ins. Co.*, 26 N. Y. 460, where after a review of the authorities it is *held* that "an acknowledgment of the receipt of the premium in policy does not estop the company from showing it has not been in fact paid. It is evidence, says the court, but not *conclusive*. I am unable to see why an acknowledgment of the receipt of the premium contained in the policy is governed by any different rule from other receipts," etc., p. 464 of the opinion. Other authorities are cited by counsel to the same effect.

However this point of contention may be, as already said, the whole scope of written stipulations of December 19, 1885, heretofore set out, very clearly shows that the premium was not paid at the issuance of the policy nor is there any one recital from which an acknowledgment of receipt of the premium can be fairly claimed.

Now, further admitting that when the policy was issued, Glick, the defendant's agent, said to Dircks that "in case he ( Dircks ) could not pay the note when due

that he (Glick) would make good to the company the premium in case of loss, agreeing also to retain the note in his (Glick's) possession," can this conversation, had at or before issuing the policy and making the note, be used to avoid the effect of the written stipulations providing a forfeiture of plaintiff's rights under the policy in case default was made in the payment of the premium note? I should say such a conversation could not have such an effect, and for three reasons.

In the first place, was such an agreement by Glick anything more than an assurance by him, individually, that he would, individually, stand good for any default that might be made by Dircks and pay the note to the company at its maturity in the event of Dircks' failure, or inability, to pay? If so, then it did not purport even to be an engagement by the company that it would not insist upon payment of the note at maturity, but it seems to have been an undertaking by Glick to step in and save Dircks from the necessary and admitted result of forfeiture under the contract with the company by his (Glick's) paying or taking care of the note at the proper time.

Then, if this be the case, such a verbal arrangement is no matter of complaint against the company, and Dircks must look to Glick for his failure to take care of the note as he had agreed to do, *if he did so agree.*

In the second place, such oral negotiations between Dircks and the company's agent had at and before the written contract of insurance and note were made cannot now be used to destroy the terms of the written engagements. It would be a clear case of varying the terms of a written contract by prior and contemporaneous oral negotiations. All previous verbal agreements were merged in the written contract. The entire engagement of the parties, with all the conditions, etc., must be conclusively presumed to be there stated. *Ins. Co. v. Mowry,* 96 U. S. 544; *Greenwood v. Ins. Co.,* 27 Mo. App. 411.

Neither could such prior negotiations between Dircks and Glick be used to estop the company from insisting upon the terms of the subsequently written contract.

"The doctrine carried to this extent would subvert the salutary rule that the written contract must prevail over previous verbal agreements, and open the door to all the evils which that rule was intended to prevent." *Ins. Co. v. Mowry*, 96 U. S. 548.

And in the third place, by the very terms of the contract of insurance, Dircks and the company agreed *"that the company shall not be bound by any act or statement made to or by the agent unless inserted in this contract,"* and yet this is just what is attempted by the plaintiff in this suit. A new, separate and independent oral agreement between the insured and the agent is sought to be annexed to the written policy and premium note for the purpose of practically annulling its written provisions. This cannot be done. *Barnes v. Ins. Co.*, 30 Mo. App. 550, and authorities cited.

II. Appellant's counsel further attempt to sustain their client's cause and save a forfeiture by claiming for him some peculiar rights he may have as assignee of Leonard, the mortgagee. This upon the ground that Blankenship, the agent of Leonard in making the loan, was told by Glick, the insurance agent, that the matter of the premium on the policy made for benefit of the mortgagee was arranged between him ( Glick ) and Dircks and that it was a cash policy, etc. It is claimed that, as Leonard acted on this statement of Glick, that the company was thereby estopped to deny the payment of the premium, and that, by Leonard's release or assignment of his rights under the policy to Dircks, that he ( Dircks ) can likewise claim, as such assignee, an estoppel on the insurance company. I cannot concur in this contention. Even to admit that there is evidence sufficient to create estoppel for the benefit of Leonard,

still Dircks cannot claim the benefit of any such statements that may have been made by Glick, whereas, in fact, *he* knew that these statements were untrue. He ( Dircks ) was not deceived by any such statements ( if any such were made ), and therefore such statements cannot estop the defendant from asserting the truth as between it and plaintiff. Bigelow on Estop. 520.

Dircks was all the time the contracting party. Leonard was entitled to have the loss paid to him co-extensive with his interest as mortgagee, and when he released this to Dircks the matter stood then as though no such endorsement was ever made on the policy.

From a review of the whole case I think a demurrer to the evidence was correctly sustained and that the judgment of the circuit court should be affirmed. Judgment affirmed. All concur.