Hillsborough, }
Nov. 6, 1923. }

METROPOLITAN LIFE INSURANCE CO. *v.* FLORENCE OLSEN.

SAME *v.* SAME.

FLORENCE MAYO *v.* METROPOLITAN LIFE INSURANCE CO.

SAME *v.* SAME.

The falsity of a statement which the parties have expressly warranted to be true, or have agreed shall constitute a material part of the contract, avoids the policy; while if the parties have not agreed that the statement shall be considered material, the policy is not affected unless the misstatement is in a matter material to the risk assumed by the insurer.

The contract of insurance, viz., what the parties agreed upon, is determined by the meaning of the documentary evidence, the policy and such other papers as the law permits to be used in proof thereof.

An untrue statement in an application for insurance that the beneficiary was the wife of the assured is not ground for cancelation when the statement was not intended to affect the contract itself but merely to identify the beneficiary.

In the absence of provisions in the constitution or by-laws of an insurer, limiting possible beneficiaries to a certain class, a statement in the application as to the relationship of a proposed beneficiary is to be regarded as intended merely for identification.

The rule permitting opinion evidence where assistance will thereby be rendered to the trier does not permit either party to a contract to testify to the effect of its language as he understood it.

TWO BILLS IN EQUITY.

TWO ACTIONS OF ASSUMPSIT.

The bills in equity were filed October 25, 1921, asking for the cancelation of two policies of insurance upon the life of William R. Mayo, issued June 30, 1919, and November 10, 1919, respectively, payable upon the death of Mayo to Florence Mayo, whose relationship to the assured was stated in the application and policy as that of "wife." The prayer of the bills was for decrees canceling the policies upon the ground of fraud in their procurement. The fraud alleged was the statement as to the relationship of the proposed beneficiary. The two cases in which Florence Mayo is plaintiff are suits in assumpsit to enforce the policies, the assured having died July 28, 1920. The writs in these suits were dated September 2, 1920, and entered at the September term, 1920. Counsel for the

defendants duly appeared and the cases were continued from term to term, and upon October 25, 1921, the defendants filed the general issue with a brief statement in the form of a bill in equity praying for a cancelation of the policy.

The cases were heard on the bills in equity by *Sawyer, J.,* who found the following facts. Florence Mayo named in the policies as the wife of the insured and who was the beneficiary he intended was not his wife. The insured had a lawful wife living at his decease, Susan Edith Bates Mayo, to whom he was married January 23, 1908, but with whom he had not lived since January, 1910. The insured and Florence lived together in the relation of husband and wife from 1910 until his death, and introduced each other as such to their friends. Florence had a husband, one Olsen, living in 1910, from whom she procured a divorce in 1915. The insured twice took steps toward entering a libel for divorce but did not do so. Mrs. Susan Edith Bates Mayo filed a libel for divorce against him June 9, 1920, for desertion, but he died before the return day. Florence and the insured agreed when they began living together to get divorces and then to marry.

Subject to exception, the court found that the relations under which the insured lived with the proposed beneficiary increased the risk insured and that the defendants would not have issued the policies if they had known the fact.

Whether or not, upon the facts, the policies or either of them should be canceled was reserved by *Sawyer, J.,* as an important question of law in advance of further proceedings. The evidence containing exceptions taken by the beneficiary is made a part of the case, together with the policies, applications, docket entries and motions made at the trial.

*Branch & Branch (Mr. Frederick W. Branch* orally), for the company.

*Murchie & Murchie* and *Tuttle, Wyman & Starr (Mr. Alexander Murchie* orally), for Florence, the beneficiary.

PARSONS, C. J. "Every policy of insurance issued or delivered within this state on or after the first day of January, nineteen hundred and eight, by any life insurance corporation doing business within the state shall contain the entire contract between the parties." Laws 1907, *c.* 110, *s.* 1. Whether under this statute the

parties could agree that another paper not incorporated in the policy should contain a part of the contract so that either could rely upon stipulations therein, and whether, if they could not, the attaching of a copy of such a paper to the policy makes the original a part of the policy within the meaning of the statute, and whether, if it does, a paper readable only by the reckless use of good eyes (*De-Lancey* v. *Insurance Co.*, 52 N. H. 581, 590) is a sufficient copy, are questions that have not been raised. It may be the policy was not "issued or delivered within this state."

Assuming, therefore, that the contract between the parties was not in conflict with the law of the state, the main question is, what was the contract they made? In the absence of statutory prohibition, parties to insurance contracts, like parties to other contracts, may incorporate into their contracts such conditions as they see fit, and unless their stipulations offend the moral sense of the community so that to require them to be carried out would transgress the policy of the state, courts will enforce the contracts as made. Upon the contention that the liability of one party under a contract is discharged by a false statement of the other in the making of the contract, the question is whether the parties agreed that the truth of such statement should be a condition precedent to the liability of the other, then called a warranty, or, if not, was the fact one whose verity was understood to be material to the contract or one not entering into the contract. In the first two cases, the falsity of the statement avoids the contract. In the latter it does not, because its truth is no part of the contract. "The falsity of a statement which the parties have expressly warranted to be true, or agreed shall constitute a material part of the contract, avoids the policy; while if the parties have not agreed that the statement shall be considered material, the policy is not effected [affected] unless the misstatement is in a matter in fact material to the risk assumed by the insurer." *Dwyer* v. *Insurance Co.*, 72 N. H. 572, 573; *Boardman* v. *Insurance Co.*, 20 N. H. 551, 552. The contract of the parties, what they agreed upon, is determined by the meaning of the documentary evidence, the policy and such other papers as the law permits to be used in proof thereof.

"In construing insurance policies courts are governed by the same general rules which are applicable to other written contracts. That is to say, it is the duty of the court to adopt that construction of the policy which, in its judgment, shall best correspond with the intention of the parties, which is to be ascertained from the whole

instrument," and the subject matter of the contract. *Stone* v. *Insurance Co.*, 69 N. H. 438. "The interpretation of an insurance contract, like the interpretation of other contracts, depends upon the intention of the parties ascertained from legally competent evidence. For sound reasons, universally recognized in the administration of justice, the evidence which is admissible upon the question of the meaning or intention of the parties does not include ordinarily their parol testimony. The point to be determined is, not what they in fact intended or expected to do, but what they in fact expressed as their purpose in the writing presented for interpretation. *Goodeno* v. *Hutchinson*, 54 N. H. 159. It is not the province of the court to make contracts for parties, or to allow them to change, modify, or abrogate their agreements by parol proof that they did not intend to bind themselves by the terms they chose to employ as expressive of their intention." *Marsh* v. *Insurance Co.*, 71 N. H. 253, 254.

The application in each policy is upon a printed form supplied by the insurer, and that for each policy contains the following, the word italicized being inserted with a pen: "Whom do you designate as beneficiary to receive proceeds of policy in event of your death? (Print) *Florence Mayo.*

*Home* Occupation.

Relationship of proposed beneficiary. *Wife* Age *38*.

P. O. Address *56 No. State St., Concord, N. H.*"

Florence Mayo was not the wife of the assured at the time of the applications. She had been married to one Olsen, from whom she secured a divorce in 1915. The assured had a wife whom he married in 1908 but with whom he had not lived since 1910. Since 1910 the assured and Florence had lived together as husband and wife under a mutual agreement to marry when they could legally do so, and introduced each other to their friends as husband and wife. The only ground upon which the insurer asks the cancelation of the policies is the statement in the application for each as to the relationship to the assured of the proposed beneficiary. The statement is descriptive of and tends to identify the person whom the assured wished made beneficiary. That he intended the proceeds on his death should be paid to Florence, then known in the community as his wife, is found to be the fact. For the purpose of description and identification the statement was true. Florence was known as the insured's wife among their friends and could be located by that term. Legally she was not his wife. Their way of life was not in accord with the

criminal law or the moral view of the community. But the court is not now administering the criminal law or their view of the law of morals. If it were, fining one of the parties $12,000 for the benefit of an insurance company, or depriving her of that sum to express the court's indignation at the immorality of her habit of life, would hardly satisfy the ordinary sense of justice.

But no such question is presented. Whether the manner of life of the assured and beneficiary was blameless or blameworthy is immaterial unless the parties have made that conduct a material element of their contract. This is to be found, as already suggested, from the terms of the contract and not by parol evidence as to what they intended. The findings that the relations under which the beneficiary and assured lived increased the hazard of the risk which the company insured, and that the company would not have issued the policies if it had known the truth are immaterial and founded in part upon incompetent evidence. The inquiry which the assured answered relates not to his manner of life but to the relationship of the proposed beneficiary. The question of fact raised, if it could be found the parties made the fact inquired about a part of the contract, would be whether the fact that the insured desired to make a woman not his wife a beneficiary under the policy affected the hazard.

But it is clear upon any reasonable construction of the language that the paragraph in each application upon which the claim to cancelation is based was not intended to affect the contract itself but merely to identify the beneficiary. To her proper identification the assured's intention is directed. Printing the name is suggested, age and postoffice address are called for. There is nothing in this part of the application to indicate the insurer was interested in the legality of the applicant's marital relations. The question is not devised to bring out the facts on that point. The assured might have asked that the policy be payable to his estate or some other relative. Truthful answers would not, because inquiry as to them was not made, have disclosed the facts now relied upon.

Moreover the policy provides: "This Policy is written with the right of the Insured to change the Beneficiary. When such right has been reserved, and if there be no written assignment of this Policy on file with the Company, the Insured may (while the Policy is in force) designate a new beneficiary, with or without reserving right of change thereafter, by filing written notice thereof at the

Home Office of the Company accompanied by the Policy for suitable endorsement. Such change shall take effect upon the endorsement of the same on the Policy by the company and not before." There is no reservation as to the relationship of the proposed new beneficiary. If the insurer upon receipt of notice of change of beneficiary had refused to endorse the change upon the policy, it could have been compelled to make the endorsement and the change would have taken effect despite the refusal to endorse it on the policy. *Sanborn* v. *Black,* 67 N. H. 537. It cannot be found that the insurer regarded the relationship of a proposed beneficiary as material to the risk when it expressly agreed in the policy to pay to anyone the insured might name. The statement was inserted solely to identify the beneficiary.

Where such a statement is a warranty and not a mere representation, its falsity necessarily avoids the policy. *Gaines* v. *Fidelity &c Co.,* 188 N. Y. 411. The application for the second policy contains a statement tending to the conclusion that everything therein over the signature of the applicant was warranted to be true. It is said: "I hereby agree that if the answers and statements herein are not correct and wholly true, any policy issued hereon shall be null and void." But the policy contains the following: "All statements made by the Insured shall, in the absence of fraud, be deemed representations and not warranties."

There is no finding that the insured, when he described his proposed beneficiary as his wife or as occupying that relationship as she had for ten years, made the statement with the intent to defraud the insurance company. The statement as to the relationship of the proposed beneficiary is therefore not to be treated as a warranty. This is the view taken by the insurer in the litigation. It has attempted to show not merely that the statement was false but that it increased the hazard and that, if it had known the truth, it would not have made the contract. But as it is clear from the contract itself that the statement was an immaterial one and was no part of the contract of assurance into which the parties entered, its falsity does not avoid the contract. Where by statute, or the constitution or by-laws of the insurer, possible beneficiaries are limited to a certain class, to recover as beneficiary, the claimant must be within the class. The authorities, however, are not uniform on this point. In the absence of such provisions the weight of authority sustains the view that a statement in an application for insurance as to the relationship of a proposed beneficiary is to be regarded as

intended merely for identification, as mere *descriptio personae.* *Vivar* v. *Knights of Pythias,* 52 N. J. Law 455; *Standard Life &c Insurance Co.* v. *Martin,* 133 Ind. 376; *Lampkin* v. *Insurance Co.,* 11 Col. App. 249; *Equitable Life Assurance Soc'y* v. *Paterson,* 41 Ga. 338; *Slaughter* v. *Slaughter,* 186 Ala. 302, 307; *Story* v. *Association,* 95 N. Y. 474; *Baltimore Life Ins. Co.* v. *Floyd,* (Del.) 5 Boyce, 431; *Brogi* v. *Brogi,* 211 Mass. 512.

Upon the allegations of the bill and the facts found, the court cannot decree a cancelation of the policies. This is the only question transferred.

At the argument, the possible falsity of other statements in the application was suggested. Nothing is alleged as a ground for canceling the policies except the statement as to the relationship of the proposed beneficiary. The only question transferred is as to the decree in equity upon the facts found. As to other statements in the application no allegation has been made, facts found or trial had. The response of counsel to this suggestion, that he had met the case made, seems a sufficient answer as the case stands.

The consideration at this time of the questions raised as to the admissibility of evidence may aid the parties.

The opinion of a witness is admissible when "the witness' knowledge of the matter in relation to which his opinion is asked is such, or so great, that it will probably aid the trier in the search for the truth." *State* v. *Killeen,* 79 N. H. 201, 202. "Unless it can 'be presumed that all men are so familiar with' the matter 'that they can derive no information on the subject from the opinion of a witness expert' thereon, his opinion may be received." *Gardner* v. *Company,* 79 N. H. 452, 455. The evidence of the insurance manager called by the insurers was not therefore objectionable as matter of opinion, for it could be found the knowledge he had might aid in determining the truth. *Olgiati* v. *Company,* 80 N. H. 399, 403; *Laird* v. *Railroad,* 80 N. H. 377, 379. But this does not permit either of the parties to a contract to testify as to the effect of the language of the contract as they understood it. *Marsh* v. *Insurance Co.,* 71 N. H. 253, 254. "The insurer cannot be permitted to testify that he would not have taken the risk had he known the facts." 2 May, Insurance (4th *ed.*), 580; *New Era Ass'n* v. *Mactavish,* 133 Mich. 68, 71.

Florence's want of insurable interest alleged in the bill has not been urged as a ground for avoiding the policy. See *Mutual Benefit*

*Life Ins. Co.* v. *Cummings,* 66 Or. 272; s. c., 47 L. R. A. (N. S.) 252 and note. The materiality of the contention, whether well founded or not, is understood to be abandoned.

*Case discharged.*

All concurred.