SCHAEFER *v.* PENINSULAR CASUALTY INSURANCE CO.

INSURANCE—ACCIDENT—CONSIDERATION—PAYMENT OF PREMIUM.
  Recovery under accident insurance policy which recited undertaking in consideration of premium is denied where insured never paid premium.
  NELSON SHARPE, C. J., and BUSHNELL and EDWARD M. SHARPE, JJ., dissenting.

Appeal from Kent; Verdier (Leonard D.), J. Submitted January 3, 1934. (Docket No. 15, Calendar No. 37,443.) Decided April 3, 1934.

Assumpsit by Alice Schaefer against Peninsular Casualty Insurance Company on an accident insurance policy. Judgment for plaintiff. Defendant appeals. Reversed, without a new trial.

*Butterfield, Keeney & Amberg,* for plaintiff.

*Shields, Silsbee, Ballard & Jennings,* for defendant.

BUSHNELL, J. (*dissenting.*) This case was tried without a jury. The plaintiff declared on an accident insurance policy issued on November 19, 1920,

to Earl E. Leonard. In his application, bearing the same date as the policy, Leonard directed that, in case of his death by accident, the proceeds should be payable to Alice Leonard, whom he described therein as his wife, and among other representations, he said: "My habits are temperate." The recitals of the policy as to consideration are also of importance; it was agreed that defendant "in consideration of the statements in the application for this policy, a copy of which is indorsed hereon and made a part hereof, and of $75 premium, does hereby insure," etc.

The application was secured by F. A. Botsford, then an authorized agent of defendant and "assistant manager of the accident and health department" of the defendant company. Botsford personally delivered the policy. The date of delivery is not definitely fixed in the record, although the policy shows that Botsford countersigned it on December 6, 1920. Botsford went over the contract with Leonard when he delivered it and started to write a receipt. Leonard interrupted him, saying,

"I have plenty of money to pay that, but I wish to pay this by check, and I am having my account transferred from Detroit to Lansing. It is after hours and I will mail you a check tomorrow."

He showed Botsford four or five hundred dollars in cash.

Botsford testified:

"I left the policy in his possession, thinking he would send me a check the next day, as agreed. The check did not come to me."

Botsford further testified that he next saw Leonard after the Christmas holidays, and asked that the policy be returned to him; that Leonard said his

wife had it in Chicago, and added: "And by the way, we just sent a check to your home office in Bay City for $37.50;" and that he went over the records later and could find no receipt. Botsford's final conversation with Leonard occurred a month or so later, at which time Leonard declared:

"I don't want that accident policy; I want a health and accident policy, $100 a week. What will it cost?"

The agent testified that he replied:

"$140, Mr. Leonard, and you will have to have the cash this time."

Leonard died as the result of an automobile accident near Chelsea, Michigan, on November 4, 1921. The attending physician testified that he smelled liquor on the insured's breath but the remainder of his testimony indicates that the deceased was perfectly rational and in full command of his senses up to the end.

Plaintiff, through her attorney in Chicago, requested forms on which to make proof of loss, which were refused by the company in a letter dated November 21, 1921, in which the following appears:

"Our investigation disclosed the fact that we had made several attempts to collect this premium from Mr. Leonard, at least two of them personally by Mr. Botsford, and on each occasion Mr. Leonard agreed to send in the premium but unfortunately he neglected to do so."

Plaintiff commenced her action on the policy on July 21, 1922, and the record includes as an exhibit a copy of a bill of complaint by a successor company, praying for a cancellation of the policy and an injunction to restrain the action at law. This bill was sworn to on March 9, 1923, but the record is silent

as to the date of filing or the outcome of this action. Almost 10 years after the commencement of suit, the court below heard the case, and on December 14, 1932, entered a judgment in favor of the plaintiff for the face of the policy ($10,000) plus interest at five per cent. We are not informed as to the reasons for this 10-year delay. Defendant has appealed from this judgment and the denial of its motion for a new trial.

In discussing the materiality of certain statements made by the insured in his policy application, and claimed by the defendant to have been false, we must consider the provisions of 3 Comp. Laws 1929, § 12444, which reads:

"The falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."

These provisions were substantially embodied in the application form.

Prior to the passage of this act, we held that insurance companies had the right by contract to make most representations material. See, *Bonewell v. North American Accident Insurance Co.*, 160 Mich. 137, and cases therein cited. Since its passage, however, a different rule has prevailed. As pointed out by Justice STEERE, the statute "puts upon plaintiff not only the burden of proving the falsity of the statement but intent to deceive, or other specified material results injurious to the insurer." *Business Men's Assurance Co.* v. *Marriner*, 223 Mich. 1.

It cannot be said from the evidence produced by the defendant that the trial court erred in its finding as to the insured's habits. Occasional drinking,

even to excess, is not in itself sufficient to brand one as intemperate in habits. *Insurance Co. v. Foley,* 105 U. S. 350; *Northwestern Life Ins. Co. v. Muskegon Bank,* 122 U. S. 501 (7 Sup. Ct. 1221).

Part seven of the policy application reads as follows:

"Policy to be payable in case of death by accident under its provisions to
Beneficiary's name in full
Alice Leonard
Residence same, relationship wife."

It seems to be undisputed that, when the application was signed by Leonard, he and Alice Schaefer had an understanding between them that they were to be married; that plaintiff was granted a decree of divorce from her former husband in Cook county, Illinois, on November 23, 1920, and that the Illinois law forbade marriage for one year from the date of the decree.

Appellant contends that part seven of the application contained such a material misrepresentation of fact that it was relieved from liability. This claim must be tested by the statute quoted above. As to this, we agree with the conclusions of the trial court. We quote from its opinion:

"There is nothing in this record to indicate that the applicant falsely stated his marital condition with any actual intent to deceive. Knowing that he purposed to marry plaintiff, he merely described his intended wife as his present wife, and it is fair to assume that this was done merely as a matter of convenience to obviate the necessity of a future change in the policy.

"The weight of authority apparently sustains the view that a statement in the application as to the relationship of a beneficiary is to be regarded as

intended merely for identification and not as a material representation affecting either the acceptance of the risk or the hazard assumed by the insurer.'' *Metropolitan Life Ins. Co.* v. *Olsen* [81 N. H. 143 (123 Atl. 576)], 32 A. L. R. 1472, 1477 (citing numerous cases); *Standard Life & Accident Ins. Co.* v. *Martin,* 133 Ind. 376 (33 N. E. 105); *Bogart* v. *Thompson,* 24 Misc. Rep. 581 (53 N. Y. Supp. 622); *Berdan* v. *Milwaukee Mutual Life-Ins. Co.,* 136 Mich. 396 (4 Ann. Cas. 332).

The record is silent as to any inquiry on this subject by the company, and it is apparent that the only object of the question was to identify the beneficiary for the purposes of payment. After having held in the *Berdan Case, supra,* that the description of the beneficiary as a nephew, when in fact he was no blood relation, could not invalidate the policy, we cannot now, with the added effect of the statute, hold as a matter of law in the case at bar that such a statement materially affected either the acceptance of the risk or the hazard assumed by the insurer.

The appellant asks: ''When the applicant for an accident policy obtains possession of the policy from the agent upon the pretext that he desires to pay the premium by check, and his promise to send a check to the insurance company the next day, but in fact never pays the premium, did the policy constitute a valid contract?'' To state the question as it was put on the argument before us: Was there a failure of consideration?

It seems to us that this is the important question in the case. We do not care to hold that insurance companies may be required to pay when they have received nothing, unless there has been an unconditional delivery of the policy or the insurer, by its conduct, is estopped to raise the question. In our statement of facts we have attempted to set up the

situation giving rise to this question, and from a careful analysis of the record we find ourselves unable to agree with appellant's contention that a binding contract was not made.

Botsford seemingly made no serious attempt to secure the return of the policy, nor was any action taken by the company until more than eight months after plaintiff filed her declaration. The letter sent to plaintiff's attorney, in reply to his demand for proof of loss blanks, hereinbefore quoted, is not very helpful to the company, and the testimony in its favor on this point not any too strong.

Appellant has ably briefed the law on this question. It has generally been held that a recital of payment of premium in an insurance policy that has been unconditionally delivered, estops the insurer from contesting its liability on the question of non-payment of the initial premium. It should be noted that the policy in the case at bar embodied no provision making receipt of the initial payment a condition precedent to liability. What constitutes such a recital of payment has been the subject of conflict in the decisions. They readily fall into three distinct classes:

1. "In consideration   *   *   *   of the premium of ————— dollars, receipt of which is hereby acknowledged."

The cases are fairly unanimous as to the effect of such language expressly acknowledging payment, and hold that, in the absence of fraud, the insurer is estopped from contesting the validity of the policy on the grounds of non-payment of premium. See, *Hollingsworth* v. *Liberty Life Ins. Co. of Illinois,* 241 Mich. 675; *Mutual Life Ins. Co. of New York* v. *Vaughan,* 125 Miss. 369 (88 South. 11).

2.  "In consideration of the payment of ———— dollars."

The cases are not entirely in accord as to whether such a recital is clearly an acknowledgment of the receipt of the required premium. Its language is, of course, not as strong as that stated in class one.

In *Britton* v. *Metropolitan Life Ins. Co. of New York,* 165 N. C. 149 (80 S. E. 1072, Ann. Cas. 1915 D, 363), such language was held to be an admission effective in estopping the insurer from questioning payment. See, also, *Basch* v. *Humboldt Mutual Fire & Marine Ins. Co.,* 35 N. J. Law, 429; *Provident Life Ins. Co. of Chicago* v. *Fennell,* 49 Ill. 180; but *contra, Missouri State Life Ins. Co.* v. *Salisbury,* 279 Mo. 40 (213 S. W. 786).

3.  "In consideration of ———— and of ———— dollars."

This is the type of recital we have in the case at bar. It is certainly, by far, the weakest of the three recitals considered. There is no express statement of receipt or of payment. It merely mentions a certain number of dollars as constituting a part of the consideration. In one case a Missouri court refused to find an estoppel, stating:

"It does not acknowledge receipt of that amount, indeed is silent thus far as to whether 'paid in hand' or agreed to be paid." *Dircks* v. *German Ins. Co. of Freeport, Illinois,* 34 Mo. App. 31, 41.

A contrary conclusion was reached by a Colorado court on the ground that such language "imports the payment prior to the delivery, as the consideration for the delivery of the contract to the insured." *Standard Accident Ins. Co.* v. *Friedenthal,* 1 Col. App. 5 (27 Pac. 88).

The estoppel cases seem to proceed upon the assumption of one important principle. It appears to be generally conceded that, with a clear and unmistakable acknowledgment of receipt of the premiums in the policy, it would be unfair and unjust to allow the insurer to deny such payment in order to avoid liability on its contract. The insurer is in a position to protect itself as the scrivener of the policy, and it is better to allow it to take the consequences of an occasionally ill-advised statement it may make therein, rather than to permit it to avoid liability by contradicting its own acknowledgment. On the other hand, when the insurer merely attempts to collect a premium payment rather than to deny liability, such a recital in the policy will be given only *prima facie* rather than conclusive effect. The results are not so serious to the insured and the courts, therefore, tend to be more liberal in their treatment of the insurer.

Standing alone, we are unwilling to hold that the language of the policy before us raises an estoppel, but we must also take into consideration all the facts surrounding the relations between the insurer and the insured. In *Farnum* v. *Phœnix Ins. Co.*, 83 Cal. 246 (23 Pac. 869, 17 Am. St. Rep. 233), the court upheld the validity of a policy in the following language:

"If the policy had contained a formal receipt of premium, its unconditional delivery would have been conclusive evidence of payment, so as to have estopped the defendant from denying the validity of the policy notwithstanding the declaration in it that it shall not be binding until the premium is actually paid;   *   *   *   and upon principle, the same result should follow where the policy is delivered as a valid and completed contract upon a consideration expressed therein, the receipt of which is impliedly

acknowledged, an authorized credit having been agreed upon as an equivalent and substitute for cash payment.''

A transfer of the manual possession of the policy to the insured raises a presumption that the policy contract has become effective and binding. Decision on this question rests with the jury. *Taylor* v. *Columbian League,* 135 Mich. 231 (106 Am. St. Rep. 392). The production of the policy and the proof of death also make a *prima facie* case for the plaintiff. *Homann* v. *Allgemeiner Arbeiter Bund of Michigan,* 184 Mich. 417. We believe the trial judge's comments on the defendant's conduct in connection with the issuance of the policy are pertinent:

''The policy was delivered unconditionally in this case. Was its possession obtained by fraud? It can hardly be maintained that Leonard's showing of money with a promise to pay by check the next day constitutes fraud. It is just as consistent to say that it was an extension of the time of payment of the premium.

''To me the strange element in this case is the fact that if Botsford's testimony is to be taken as true, he knew the very next day after the delivery of the policy that the premium had not been paid; he knew when he again saw Leonard in December, 1920, that the premium had not been paid; he knew a short time later that Leonard's statement that he had sent to the company a check for one-half of the premium was untrue; he knew a month or so later that Leonard wanted a health and accident policy instead of the accident policy and told Leonard he would issue it but only upon the surrender of the first policy and the payment in cash of the premium for the second policy and knew that neither was done; all of this occurring at least nine or ten months before Leonard's death and yet not a step taken to

cancel the policy, the right to do which was specifically reserved in one of its clauses.''

From all the facts presented, we are obliged to hold that the delivery of the policy was unconditional and that the defendant is estopped to deny its validity.

Although there is nothing in the record to indicate the exact date, appellant does not dispute plaintiff's contention that motion for new trial was not made until nearly five months after the entry of judgment. In view of the provisions of the rule then in force (Court Rule No. 47 [1931]), and the fact that the material in the affidavit filed in support of the motion was largely cumulative on the issue of the deceased's temperance, it cannot be held that there was such an abuse of discretion on the part of the trial judge in denying defendant's motion, as would justify a reversal. *Orcutt* v. *White,* 224 Mich. 656.

The judgment should be affirmed, with costs to the appellee.

NELSON SHARPE, C. J., and EDWARD M. SHARPE, J., concurred with BUSHNELL, J.

WIEST, J. The judgment is reversed, without a new trial.

The insured never paid the premium and never intended to pay. Repeated requests to pay were ignored and, on one occasion, met by a falsehood that a check had been sent. The policy recited an undertaking, in consideration of the payment of the premium. There was no occasion for defendant to declare the stillborn policy dead.

I cannot sanction recovery under the circumstances here disclosed.

POTTER, NORTH, FEAD, and BUTZEL, JJ., concurred with WIEST, J.