BEK *v.* ZIMMERMAN.

1. Appeal and Error—Questions Reviewable—Defective Pleading—Decision on the Merits.

Matter of alleged defect in plaintiff's affidavit for writ of garnishment is not considered on appeal from judgment for plaintiff against garnishee, insurer under automobile policy, where decision on construction of policy disposes of the case.

2. Insurance—Automobile—Payment of Premium—Construction of Policy Indorsement.

Clause relative to terms of payment of premium which reads as follows: ''Failure to make payments to the company or its authorized agents on the due date thereof shall automatically terminate any and all coverage after such due date. * * * Upon payment of the full amount of any payment hereinafter provided after its due date, the policy shall again become effective but only from and after the time of such payment,'' *held*, not ambiguous.

3. Same—Cancellation of Casualty Policy—Statutes—Automatic Suspension of Liability.

Provision of insurance statute relating to cancellation of casualty insurance by insurer upon five days' notice and refund of excess premium without prejudice to any claim originating prior thereto *held*, inapplicable to case where liability of insurer was automatically suspended by reason of the precise terms of the insurance agreement as statute only covers situations where termination of policy is not automatic but is optional with insurer and, therefore, cannot be anticipated and provided against by the insured unless he is given ample notice of the intended exercise of that option (3 Comp. Laws 1929, § 12461).

4. Same—Suspension of Liability Under Automobile Policy for Default in Payments on Premium.

Provision of indorsement on an automobile insurance policy providing for automatic suspension of liability thereunder in case

of insured's failure to make premium payments on the due
date thereof until payments were thereafter made and restor-
ing liability only from and after the time of such payment
*held,* not contrary to public policy.

5. CONTRACTS—COURTS WILL NOT WRITE NEW CONTRACTS.
   Courts will not write new contracts for parties.

6. APPEAL AND ERROR—QUESTIONS REVIEWABLE—ESTOPPEL.
   Question as to estoppel of garnishee defendant to deny liability
   under insurance policy, not raised at the trial nor passed upon
   by the trial judge, cannot be considered by Supreme Court.

POTTER and MCALLISTER, JJ., dissenting.

Appeal from Superior Court of Grand Rapids;
Taylor (Thaddeus B.), J. Submitted January 6,
1938. (Docket No. 45, Calendar No. 39,802.) De-
cided June 30, 1938. Rehearing denied October 3,
1938.

Garnishment proceedings by Grace Bek against
Elmer Zimmerman, principal defendant, and Pre-
ferred Automobile Insurance Company of Grand
Rapids, garnishee defendant. From judgment for
plaintiff against garnishee defendant, it appeals.
Reversed.

*Allaben & Wiarda,* for plaintiff.

*Harry E. Rodgers,* for garnishee defendant.

BUSHNELL, J. The garnishee defendant appeals
from a judgment in the sum of $2,994.73, entered
upon a directed verdict for plaintiff. Plaintiff had
previously obtained a judgment in the sum of
$2,724.58 against the principal defendant, Elmer
Zimmerman, for damages arising out of an automo-
bile accident. Zimmerman was insured by the
garnishee defendant on March 25, 1936. The insur-

ance policy bore the expiration date of March 25, 1937, but this was amended by a "terms indorsement" containing the following agreement:

"Failure to make payments to the company or its authorized agents on the due date thereof shall automatically terminate any and all coverage after such due date. * * * Upon the payment of the full amount of any payment hereinafter provided after its due date, the policy shall again become effective but only from and after the time of such payment."

The total premium of $32 was required to be paid according to the "terms indorsement" as follows: $11 on April 25, 1936; $11 on May 25th; $10 on June 25th. The first premium was not paid on April 25th but was three or four days later. The second payment was not made on May 25th but was paid at the office of the company on June 16th, and the last payment, due on June 25th, was not made. Zimmerman had the accident on June 27th, for which plaintiff obtained the judgment stated.

Appellant seeks reversal of the garnishment judgment upon two grounds: first, that plaintiff's affidavit for the writ of garnishment was incurably defective in failing specifically to allege the nature of the claimed indebtedness from the garnishee defendant to the principal defendant; and second, that the "terms indorsement" provision above quoted was not void as held by the trial court, and that, applied to the instant case, this provision negatives liability. The first ground of appeal will not be considered because our conclusion as to the second disposes of the case.

We do not agree with appellee's contention that the language of the "terms indorsement" is ambiguous. If the "indorsement" is valid, there was no coverage under the policy on June 27th.

Appellee claims, however, that 3 Comp. Laws 1929, § 12461 (Stat. Ann. § 24.298), requiring the insurer to give a five days' written notice of cancellation, et cetera, is applicable and that the insurer failed to comply therewith; that if the "terms indorsement" be interpreted as attempting to evade the necessity of such notice, it is in conflict with the statute and therefore void. The statute reads:

"No policy of casualty insurance, excepting workmen's compensation, but including all classes of automobile coverage, shall be issued or delivered in this State by any corporation or other insurer authorized to do business in this State for which a premium or advance assessment is charged, unless there shall be contained within such policy a provision whereby the policy shall be cancelled at any time at the request of the insured, in which case the company shall, upon demand and surrender of the policy, refund the excess of paid premium or assessment above the customary short rates for the expired time, and whereby the policy may be cancelled at any time by the company by giving to the insured a five days' written notice of cancellation with or without tender of the excess of paid premium or assessment above the *pro rata* premium for the expired time, which excess, if not tendered, shall be refunded on demand and the notice of cancellation shall state that the said excess premium (if not tendered) will be refunded on demand, and furthermore that such cancellation shall be without prejudice to any claim originating prior thereto."

The quoted statute applies where either the insurer or the insured seeks to terminate the insurance by cancellation; it cannot be stretched to cover a situation where, as here, liability under the contract has become automatically suspended by reason of the precise terms of the insurance agreement.

The statute covers those situations where termination of the policy is not automatic but is optional with the insurer and, therefore, cannot be anticipated and provided against by the insured unless he is given ample notice of the intended exercise of that option.

Although the recent case of *Hauser* v. *Michigan Mutual Liability Co.*, 276 Mich. 624, only involved the personal accident portion of a combined liability, property loss and accident insurance policy, nevertheless the reasoning of that case is applicable here. In the *Hauser Case* the policy was issued on September 15, 1933, and the premiums were payable in five equal monthly instalments of $7.15 each. The first instalment was due on October 15th, but neither it nor any other was paid by the insured. The insured was injured on January 3, 1934, and died four days later. On January 5th a friend of the family paid defendant's agent $5, which was accepted. A directed verdict for the insurance company was affirmed on appeal. That policy contained the optional standard cancellation clause with respect to health and accident insurance policies as provided by 3 Comp. Laws 1929, § 12442 (Stat. Ann. § 24.278); and it also contained one of the alternative mandatory clauses required by section 12441 (Stat. Ann. § 24.277) with regard to default in such policies, reading as follows:

"If the default be made in the payment of the agreed premium for this policy, the subsequent acceptance of the premium by the insurer or by any of its duly authorized agents shall reinstate the policy, but only to cover loss resulting from accidental injury thereafter sustained."

Plaintiff, who was decedent's administrator, claimed on appeal that no proper notice of cancella-

tion had been given and therefore the policy remained in force.  The court said:

"Plaintiff's contention, if applicable, would be sufficient to carry the policy in force until the first payment was due.  After a premium payment became due and was in default, however, a new situation arose which is covered by the provision above quoted.  (The provision in the language of section 12441.)  * * *  When delivered, it (the policy) took effect according to its terms and became subject to subsequent conditions.

"As the contract provided for credit and instalment payments and expressly declared the effect of a payment after default, it appears plain that such provision must govern the case."

See, also, *Schaefer* v. *Peninsular Casualty Ins. Co.,* 266 Mich. 386.

Nor is the suspension provision of the "terms indorsement" contrary to public policy. *Williams* v. *Albany City Ins. Co.,* 19 Mich. 451 (2 Am. Rep. 95). In the *Williams Case* the defendant insured a schooner for a period from April 27, 1868, to November 30, 1868, and the insured gave a note for the premium, payable in six months.  The insurance contract stipulated that if the note was not paid at maturity, the policy was to be "void" so long as the note remained unpaid.  On November 12th, after the due date of the note, a loss occurred.  On November 19th the indorsers of the note paid the full amount thereof to the insurance company.  The court interpreted the word "void" to mean that the policy was suspended while the note remained unpaid and, since the loss occurred before the note was paid, no recovery was allowed upon the policy despite the fact that the insurance company had received and retained the full amount of the premium.  The court

also rejected the argument that the suspension provision was contrary to public policy in reasoning which we follow in the instant case but do not repeat at length. See pages 465 to 468 of the *Williams Case.*

This case was followed in a companion case, *Williams* v. *Republic Ins. Co.,* 19 Mich. 469, where the facts were similar, except that the insurer refused to accept the belated payment of the note.

While the facts of the *Williams Case* are not identical with those under consideration, the principles there stated are of application here. There is nothing in the instant case which warrants our changing or refusing to enforce the contract into which the parties have voluntarily entered. It is fundamental that courts may not write a new contract for the parties.

Appellee also contends that the garnishee defendant is estopped to deny liability under the policy of insurance. This question was not raised at the trial nor passed upon by the trial judge and, therefore, cannot be considered here.

The judgment entered upon the directed verdict is reversed without a new trial and, with costs to appellant.

WIEST, C. J., and BUTZEL, SHARPE, CHANDLER, and NORTH, JJ., concurred with BUSHNELL, J.

McALLISTER, J. (*dissenting*). Elmer Zimmerman, the defendant, was a truck owner performing services for the Works Progress Administration. Before he could secure work from such administration, he was required by the government to have liability insurance on his truck. He applied for such insurance in defendant company and secured a certificate

from the company to present to the government
showing that he carried liability insurance. Accord-
ing to the terms included in the policy, he was to
pay for the insurance in three instalments due 30, 60
and 90 days after the date of issuance of the policy
on March 25, 1936. The policy had certain peculiar
features, among them, provisions having the follow-
ing effect:

1. Zimmerman was to receive insurance for the first
   month without paying anything whatever until
   the end of that period.
2. Failure to make payments to the company on the
   due date thereof automatically terminated any
   and all coverage after such due date.
3. On the payment of the full amount of any pay-
   ment after its due date, the policy again became
   effective, but only from and after the time of such
   payment.
4. In case of default in the payment of the first in-
   stalment, all coverage was void from the com-
   mencement date of the policy.

The total premium of $32 was required to be paid
in three instalments: $11 on April 25, 1936; $11 on
May 25, 1936; $10 on June 25, 1936. Zimmerman
paid the first instalment on April 29, 1936, the second
payment was made June 16, 1936. On June 27, 1936,
Zimmerman had an accident with his truck. The
third instalment was never paid.

It is the contention of the garnishee defendant
that because the payment of the first instalment was
four days in default, Zimmerman was not insured
between March 25, 1936, and April 29, 1936, by virtue
of the provisions in the policy automatically ter-
minating the insurance on default. However, it is
contended that the policy was again effective on
April 29, 1936.

Defendant further claims that because of Zimmerman's default in payment due May 25, 1936, the insurance was again automatically terminated but became effective again on June 16, 1936, when the second payment was made. During the period from May 25, 1936, to June 16, 1936, it is claimed that no insurance was in effect, and because Zimmerman did not pay the third and final instalment of $10 on June 25, 1936, it is claimed that there was no insurance in effect on June 27, 1936, the day of the accident.

According to the theory of the garnishee defendant, although Zimmerman paid instalments amounting to $22 on the annual premium of $32, he was only insured intermittently for a period of 37 days of the three-month period from March 25, 1936 to June 25, 1936, or in other words, Zimmerman paid more than two-thirds of the premium of a yearly period, but only received insurance protection for approximately one-twelfth of a yearly period.

The statute, however, recognizes the fact that insurance rates are based upon the period of time during which the insured is protected. It provides that no policy of automobile coverage can be issued or delivered unless there be contained within the policy a provision whereby it shall be cancelled at the request of the insured, in which case the company shall upon demand and surrender of the policy, refund the excessive assessment or premiums above the customary rates for the expired time. 3 Comp. Laws 1929, § 12461 (Stat. Ann. § 24.298).

The policy provides that it may be cancelled at any time upon five days' written notice. If cancelled by the insured he receives a refund of excess premium paid for the period of the policy's existence on the basis of the customary short rate cancella-

tion table; if cancelled by the company, the insured receives a refund on a *pro rata* basis. If it be considered that the policy were in effect the entire three months prior to June 25, 1936, the insured, upon cancellation on such date by the company, would be entitled to a refund of everything he had paid in premiums in excess of $8, the *pro rata* amount. But although he has paid more than twice the amount necessary to insure himself for the three months period, and although the insurance company, according to its contentions, gave him only approximately 37 days' protection during that time, it is claimed that by virtue of the peculiar technical stipulations of the contract prepared by the insurance company he was not insured at the time of the accident. And the claim is made that the insured was not protected for three months and two days in spite of the fact that the amount of premium paid by him, according to the short rate cancellation table of the insurance company, would have insured him for a period of six months.

To hold that the insurance was not in effect on June 27, 1936, seems an unreasonable construction of the contract and one strongly against the insured, and consequently contrary to the rule governing the construction of such contracts. Although the contract provides that on payment of the full amount of any payment after its due date, the policy shall become effective, it does not specify for how long a period it becomes effective.

When defendant neglected to pay the full instalment on April 25, 1936, the insurance automatically terminated according to the terms of the contract; and all coverage from March 25, 1936 to April 25, 1936, was void because of this retrospective provision. Until April 29, 1936, when payment of the

first instalment was made, Zimmerman, therefore, was not insured. What, then, did the payment of April 29, 1936, cover? It certainly did not apply to any period before that time. To give any reasonable construction to the contract, it must be held that if defendant received any insurance whatever through payment of the instalment on April 29, 1936, it must have been for a period following such payment. The contract of insurance is silent on the effect of a payment made after default of the first instalment. Considering, then, that this payment was for a subsequent period, it must have been for a month's insurance, if the first three instalments are considered as covering monthly periods, until the total annual premium is paid; or such payment must cover a subsequent period equivalent to a term based upon the percentage of the annual premium which was actually paid. Eleven dollars, the amount of the payment, being 34 per cent. of the annual premium, the period during which the insurance would be in effect, would be between 65 and 70 days, as computed according to defendant insurance company's short rate table.

If, on the other hand, it be considered that the payment made April 29, 1936, was for a month of insurance, the protection to defendant lasted until May 29, 1936. No payment was then made until June 16, 1936; and, consequently, under this theory no insurance would have been in effect in the interim. But the payment of June 16, 1936, could have only a prospective effect, and under the theory of coverage from month to month it would cover such a period dating from the second payment and expiring July 16, 1936.

If the payments made be considered for prospective periods equivalent to a term based on percent-

age of annual premium paid, defendant's two payments, totalling $22, would have insured him continuously from April 29, 1936, to October 29, 1936, a period of six months, according to the short rate tables of the insurance company—including, of course, the time at which the accident occurred. It makes no difference whether the payments be considered for monthly periods or for periods equivalent to a term based upon the percentage of the annual premium paid as far as the liability of defendant insurance company is concerned. Under either, it would be liable to Zimmerman for payment of the damages resulting from the accident of June 27, 1936.

Because of the ambiguity and uncertainty in this contract with reference to the effect of past due payments, especially the payment after default of the first instalment, the chief question involved is the proper construction to be given the terms of the policy; and it does not seem reasonable to hold that when one of the instalments is paid after a default, it shall become effective only until the next payment specified in the contract is due. In such case the insured would be paying for a period of default in which he received no insurance.

In *Fallis* v. *Massachusetts Bonding & Ins. Co.*, 210 Mo. App. 579 (243 S. W. 217), the court had occasion in a case involving ambiguity, similar to that in this contract, to construe the terms of an accident insurance policy. The policy provided for monthly premiums with the proviso that upon failure to pay the instalments, the policy would lapse and that payment of any past due premium would not continue the insurance in force beyond the first day of the succeeding month, which was the date on which the succeeding instalment was due. It appeared that

the payment due on October 1st was not made until October 29th. No payments were made during November and the assured had an accident on November 21st. In holding that the payment on October 29th reinstated the policy until November 29th, the court said:

"The policy provided that the payment of past due premiums should not reinstate the policy beyond the first day of the next succeeding month. It also provided that after lapse a payment of premium should reinstate it from date of payment only. To give these provisions literal construction and enforce them strictly against the insured would mean that if the monthly payment was not paid on the first of the month or within 10 days of grace allowed, the policy would lapse and remain without force until another payment and if that payment was not made until the last day of the month, the insured would then pay the full month's premium for insurance for one day. This construction is so unreasonable that it condemns itself."

With regard to the period of time covered by past due payments, the court said:

"The only reasonable construction to be given the provision that the payment of past-due premium shall not reinstate the policy beyond the first day of the next month is that payments are required to be made in advance on the first of the month and are past due after that date, but after the policy has been in force for three months, 10 days of grace will be allowed and if a monthly payment is made within that time, that payment, although past due since the first of the month, will only extend the insurance to the first day of the next month. We think a proper construction of this policy to be that as long as the premium for a subsequent month was paid within the preceding month or on the first day of the next

month or within 10 days' grace allowed, the policy was kept in force, but when the days of grace expired without a payment being made, the policy lapsed *and a subsequent payment cannot be held to cover a period of time during the lapse when the policy was not in force for that would require the insured to pay something for nothing and would therefore be without consideration. There can be no premium past due or otherwise to cover a time when the policy was not in force,* therefore, the only time there could be a past due premium would be after the first of the month and during the days of grace. The other provision of the policy that a payment after lapse should reinstate the policy from the date of payment only, necessarily required that such payment shall apply to the future and not the past, and hence, the reinstatement would fix a *new date from which the months would be counted, and would supersede the provision that each month should mean a calendar month.* This construction of the policy is reasonable and fair to both parties and we think is fully sustained by the authorities in this State.''

In the actual computation of the periods during which the insurance was made effective by past due payments, the court found:

''January and February, 1919, were both paid, then there was no other payment until May 19, 1919. The policy had therefore lapsed and was reinstated May 19, 1919. The payment at that time carried it to June 19, 1919. On June 3, 1919, a payment of $8.45 was made. This carried the policy to August 6, 1919, and the policy not having been reinstated for three months and no other payment having been made, the policy lapsed on that date. The next payment was August 22, 1919, and the policy was reinstated on that date. This payment covered two months and extended the policy to October 22, 1919.''

Insurance is a business deeply affected with a public interest. It transcends the concept of private contract. Insurance policies in many matters of substance and detail must conform to statute. The business and transactions of insurance companies are subject to supervision by the commissioner of insurance. The public has an especial interest in automobile accident insurance. It is required by statute that for the protection of the public in certain cases, citizens be obliged to carry policies of such accident insurance.

In this case such interest is emphasized because of the fact that the insured was a Works Progress Administration contractor and according to the regulations of such administration, it was necessary before he be employed by the Federal government that he show the fact of his having been insured for such liability, as resulted in the instant case. Without such policy of insurance he would have been unable to secure a contract with the government. It was only because of the government's reliance on the representations that he was insured that his contract of employment was entered into. It would largely defeat the objectives of casualty insurance, from the public standpoint, if through deceptive and intricate provisions the public would be obliged to pay for insurance during a period in which such insurance was of no force and effect, and lose protection when it might reasonably be supposed the insurance were in effect.

While it is entirely proper to include provisions of suspension during which time the insured is not covered because of nonpayment of premium, it would be contrary to public policy to require a citizen to pay for insurance which he does not actually receive, due to uncertain and ambiguous terms of the policy;

and a construction leading to such result should be avoided if possible. It is inconceivable that any citizen would knowingly agree to pay for a year's coverage of insurance on the understanding that during that time, with the exception of a few months, he might receive no insurance protection whatever. When the first payment was past due, no insurance was in force during the period covered by such instalment, or thereafter during the period of default. The insurance had been terminated according to the contract. But the insurance company chose to accept payment of the first instalment on April 29, 1936. Upon payment by Zimmerman and acceptance by the insurance company of such first instalment, after the insurance had been terminated and after the insurance for the period between March 25, 1936 and April 25, 1936 had become void, the contract must be construed in such a way that both the coverage and payment date prospectively from the time the said payment was made. For it is obviously the intent of the parties that the insurance company receive nothing whatever in premiums for any time in which the insurance is not in effect. This intention is clearly indicated by the provision that on termination of the insurance by the company, the insured is entitled to receive and the company is obliged to pay back a *pro rata* amount of the insurance premium.

The trial court found that the contract was uncertain and construed the terms thereof to give protection to Zimmerman during the period in which the accident occurred. This was a proper and reasonable construction of the contract and the court was not in error in its construction thereof.

The issues in the instant case were raised by affidavit of garnishment and disclosure denying in-

debtedness to the principal defendant. According to statute the affidavit is to be considered the declaration, and the disclosure the plea. 3 Comp. Laws 1929, § 14867 (Stat. Ann. § 27.1865). Plaintiff demanded trial of the statutory issue so framed.

It is unnecessary for plaintiff to file written interrogatories. These are for plaintiff's benefit, and presumably are asked for, when, after the filing of disclosure, the plaintiff is uncertain as to whether an indebtedness exists, or desires further information for the purpose of the trial. Otherwise, trial of the statutory issue on affidavit and disclosure would be meaningless. The statute provides that on filing disclosure the matter of such affidavit shall be considered as denied, except so far as the same shall be admitted by the disclosure; and a statutory issue shall thereupon be deemed framed for the trial of the question of garnishee defendant's liability to plaintiff. It is unnecessary to search outside the language of the statute for the intention of the legislature. The proceeding was a proper one to ascertain and fix the liability of garnishee defendant.

Judgment should be affirmed, with costs to plaintiff.

POTTER, J., concurred with MCALLISTER, J.