# STATE OF MICHIGAN

# COURT OF APPEALS

HALLIE L. WILSON,

        Plaintiff-Appellee,

v

TITAN INSURANCE COMPANY,

        Defendant-Appellant.

UNPUBLISHED
April 28, 2016

No. 326295
Washtenaw Circuit Court
LC No. 13-000025-NF

Before: SAWYER, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant Titan Insurance Company (Titan) appeals as of right the trial court's orders denying its motion for summary disposition and granting summary disposition in favor of plaintiff. This case arises out of plaintiff's claim for first-party no-fault benefits for injuries she sustained in a motor vehicle accident. The dispute between the parties primarily concerned whether plaintiff's insurance policy with Titan had been cancelled before the accident occurred. The trial court determined as a matter of law that the policy remained in effect at the time of the accident. After the trial court rendered its summary disposition ruling, the parties stipulated that plaintiff's damages totaled $250,000, with the stipulation being subject to Titan's appeal of the court's summary disposition decision. We affirm.

## I. FACTS

On January 20, 2012, plaintiff purchased a no-fault automobile insurance policy from Titan that provided for a six-month term of coverage. The total premium was $726. Plaintiff made an initial installment payment of $143. In a "Premium Payment Notice" (PPN) dated February 7, 2012, that was allegedly mailed to plaintiff, Titan indicated that it required, at a minimum, a payment of $125 by February 22, 2012. The PPN provided that timely payment of the amount due would "continue [plaintiff's] coverage in force without lapse." The PPN further stated, "Please see the other side of this form for an important notice about late payment cancellation provisions of your policy." On the reverse side of the PPN, and in a box with the heading "IMPORTANT NOTICE," was the following provision:

> *If* the premium payment is not postmarked or received before the due date
> shown, your insurance will be cancelled for nonpayment of premium.

A check which is not honored for any reason will not constitute payment and will not extend coverage. [Emphasis added.]

On the face of the PPN, it listed a cancellation-effective date of February 25, 2012, ostensibly applicable in conjunction with the conditional cancellation notice on the back of the PPN should the minimum premium payment not be made by the due date of February 22, 2012.

In the "TERMINATION" section of the underlying insurance policy itself, Titan provided:

Cancellation – This policy may be canceled during the policy period as follows:

. . .

2.      We may cancel by mailing you at the address last known by us or our agent:

a.      At least ten (10) days notice by first class mail, if cancellation is for nonpayment of premium.

Plaintiff never made any additional insurance premium payments, and in a "Confirmation of Cancellation" dated February 27, 2012, Titan informed plaintiff that her policy had been cancelled on February 25, 2012, for nonpayment of the premium, and that the policy was no longer in force. On March 5, 2012, plaintiff was seriously injured in a motor vehicle accident. Titan declined coverage relative to plaintiff's claim for no-fault personal protection insurance benefits, commonly referred to as "PIP" benefits, maintaining that coverage had been cancelled prior to the accident.

Plaintiff proceeded to file a breach of contract action against Titan, and the litigation focused on the construction of MCL 500.3020, which provides, in pertinent part:

(1) A policy of casualty insurance, except worker's compensation and mortgage guaranty insurance, including all classes of motor vehicle coverage, shall not be issued or delivered in this state by an insurer authorized to do business in this state for which a premium or advance assessment is charged, unless the policy contains the following provisions:

. . .

(b) Except as otherwise provided in subdivision (d) [inapplicable], that the policy may be canceled at any time by the insurer by mailing to the insured at the insured's address last known to the insurer or an authorized agent of the insurer, with postage fully prepaid, a not less than 10 days' written notice of cancellation with or without tender of the excess of paid premium or assessment above the pro rata premium for the expired time.

Titan's position was that the cancellation provision in the insurance policy, quoted earlier, complied with the requirements of MCL 500.3020(1)(b) and that Titan had satisfied the statute and the terms of the insurance policy by mailing plaintiff a notice of cancellation, *as embedded in the PPN*, more than 10 days before the effective date of the cancellation on February 25, 2012. Therefore, according to Titan, plaintiff had no insurance coverage through Titan when the accident occurred on March 5, 2012. Plaintiff's position was that the 10-day notice period in MCL 500.3020(1)(b) and the insurance policy did not start running when Titan purportedly mailed the PPN containing the cancellation language, given that there was no basis to cancel for nonpayment when the notice was sent. Rather, according to plaintiff, Titan was required to await plaintiff's default for nonpayment, which occurred on February 22, 2012, before it mailed a notice of cancellation and started the clock on the 10-day notice period.

Titan filed a motion for summary disposition under MCR 2.116(C)(10), arguing that there was no insurance policy in place and effective when plaintiff was injured in the motor vehicle accident in light of the earlier cancellation. The trial court denied Titan's motion for summary disposition essentially on the basis of plaintiff's position in the case, emphasizing from the bench that "the notice is supposed to be a notice of cancellation." Subsequently, plaintiff filed a motion for summary disposition under MCR 2.116(C)(10), arguing that given the trial court's previous ruling concerning cancellation, Titan had no defense to liability under the insurance policy and that she was entitled to PIP benefits with respect to all of her alleged allowable expenses. Titan filed a response to plaintiff's motion for summary disposition, along with requesting summary disposition in its favor under MCR 2.116(I)(2). Titan challenged plaintiff's claimed allowable expenses and also reargued the cancellation issue, contending that the policy was not in effect at the time of plaintiff's accident. The trial court denied plaintiff's motion for summary disposition on the issue regarding whether she was entitled to all of the PIP benefits being claimed, considering that she had to establish that the claimed benefits were for reasonable and allowable expenses arising out of the accident. However, on the issue regarding cancellation of the policy, the trial court clarified that its previous ruling was intended to not only deny Titan's motion for summary disposition on the subject, but to also grant summary disposition in favor of plaintiff on the matter under MCR 2.116(I)(2). Thereafter, a stipulated order of damages in the amount of $250,000 was entered, subject to Titan's appeal concerning the cancellation issue, thereby clearing the way for this appeal by Titan as of right.

## II. ANALYSIS

### A. STANDARD OF REVIEW AND MCR 2.116(C)(10)

This Court reviews de novo a trial court's decision on a motion for summary disposition, *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011), issues of statutory construction, *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008), and matters concerning the interpretation and legal effect of a contract, *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). With respect to the well-established principles governing the analysis of a motion for summary disposition brought pursuant to MCR 2.116(C)(10), this Court in *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), stated:

In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

### B. CONTRACT AND STATUTORY CONSTRUCTION PRINCIPLES

"In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory*, 473 Mich at 464. "If the language of [a] contract is unambiguous, we construe and enforce the contract as written." *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003). A contract is ambiguous if its provisions are capable of conflicting interpretations. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003). If the contract language is ambiguous, "the ambiguous language presents a question of fact to be decided by a" trier of fact. *Cole v Auto-Owners Ins Co*, 272 Mich App 50, 53; 723 NW2d 922 (2006).

In *Whitman v City of Burton*, 493 Mich 303, 311-312; 831 NW2d 223 (2013), the Michigan Supreme Court articulated the principles applicable to statutory interpretation:

When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature. To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory. Only when an ambiguity exists in the language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent. [Citations omitted.]

### C. DISCUSSION AND RESOLUTION

We conclude that this case is ultimately controlled by the cancellation-notice provision contained in the insurance policy regarding nonpayment of a premium. Again, MCL 500.3020(1)(b) provides, in abbreviated form, that "[a] policy of casualty insurance, . . .

-4-

including all classes of motor vehicle coverage," must include a provision "that the policy may be canceled at any time by the insurer by mailing to the insured . . . a not less than 10 days' written notice of cancellation . . . ." As reflected and nicely summarized in the following discussion in *Grable v Farmers Ins Exch*, 129 Mich App 370, 372-374; 341 NW2d 147 (1983), our Supreme Court has examined the language in MCL 500.3020(1)(b), or similar earlier versions of the statute, dating back many years:

> *Eghotz v Creech*, 365 Mich 527; 113 NW2d 815 (1962), and *Bek v Zimmerman*, 285 Mich 224; 280 NW 741 (1938), are controlling in this case. In *Eghotz*, the defendant paid his insurance company $10 on May 14, 1956, and agreed to make monthly payments after that until the total premium of $50 was paid. The policy stated that if he did not pay the installments when due, it would expire. The defendant paid only one $10 payment and on July 18, 1956, he was injured. The Supreme Court held that the policy had lapsed before the injury because the defendant had not kept his premiums current under the contract. It rejected the claim that § 3020 was the exclusive remedy for cancellation. Because the contract had an automatic lapse clause § 3020 did not apply.
>
> In *Bek*,[1] the parties entered into a policy that ran from March 25, 1936, through March 25, 1937. The policy specifically stated that if the insured did not pay it would automatically terminate. It also required the plaintiff to pay on April 25, 1936, May 25, 1936, and June 25, 1936. Although the plaintiff did pay the first premium on time, he paid the second premium on June 16 and did not pay the third premium. He was injured on June 27. The Supreme Court held that the statute then in effect, the predecessor to § 3020, did not apply where the policy automatically ends when the insured fails to pay the premiums. . . . .
>
> [In] . . . *DeHaan v Marvin*, 331 Mich 231; 49 NW2d 148 (1951)[,] . . . the insurance company was found to be liable on the contract, even though the defendant did not pay anything at all, because the contract contained no cancellation provision. Therefore, that insurance policy was effective until the insurance company gave the insured notice of cancellation as required by the statute then in effect. In the present case, the contracts did have a cancellation provision. The parties may contract to whatever they wish as long as it does not violate the law or public policy[.]

---

[1] At the time of *Bek* in 1938, our Supreme Court examined a predecessor statute to MCL 500.3020, that being 3 Comp Laws 1929, § 12461, which, with respect to policies of casualty insurance, "including all classes of automobile coverage," required inclusion of a provision "whereby the policy may be cancelled at any time by the [insurance] company by giving to the insured a five days' written notice of cancellation with or without tender . . . ." See *Bek*, 285 Mich at 227.

In *Bek*, the insurance policy provided for automatic termination of coverage if a premium payment was not made on its due date. *Bek*, 285 Mich at 226. With respect to the statute, the *Bek* Court observed:

> The quoted statute applies where either the insurer or the insured seeks to terminate the insurance by cancellation; it cannot be stretched to cover a situation where, as here, liability under the contract has become automatically suspended by reason of the precise terms of the insurance agreement.

> The statute covers those situations where termination of the policy is not automatic but is optional with the insurer and, therefore, cannot be anticipated and provided against by the insured unless he is given ample notice of the intended exercise of that option. [*Id.* at 227-228.]

In *Eghotz*, the insurance policy indicated that the failure to pay an installment when due would cause the policy to expire when coverage lapsed under payments actually made. *Eghotz*, 365 Mich at 533. Our Supreme Court rejected the argument that a "policy may be canceled by the insurer only by mailing to the insured a 10-day written notice of cancellation[.]" *Id.* at 529-530.

The authorities discussed above indicate that if a premium installment under an insurance policy is not made when due and the policy contains language reflecting that coverage will lapse, expire, or terminate for nonpayment of a premium, a notice of cancellation under MCL 500.3020(1)(b) need not be pursued. Titan does not suggest that such a provision was contained in the insurance policy and has certainly not urged that the policy automatically expired on its own terms due to nonpayment. Instead, Titan has all along placed reliance on the language in the insurance policy allowing it to cancel a policy upon "[a]t least ten (10) days notice by first class mail, if cancellation is for nonpayment of premium." See *Grable*, 129 Mich App at 374 (policies had cancellation provisions and parties may contract to whatever they wish absent a violation of law). Because Titan's insurance policy had a cancellation provision for nonpayment of a premium and not an automatic lapse or termination clause, the cancellation provision governed, and we will assume the validity of Titan's contention that the provision complied with MCL 500.3020(1)(b).[2] The contractual language, plainly and unambiguously, spoke in terms of a notice of cancellation "for nonpayment of premium." However, plaintiff was not in default or breach of the policy with respect to premium payments at the time the PPN was sent. It was impossible for Titan to comply with the insurance policy's 10-day notice provision by mailing a cancellation notice for nonpayment of a premium before the occurrence of that contingency or event. Instead, the notice mailed to plaintiff merely concerned the *future possibility* of nonpayment. It was not until plaintiff actually missed the due date for making the premium payment that it became feasible for Titan to send a true notice of cancellation for "nonpayment of premium." Titan's February 27, 2012 so-called "Confirmation of Cancellation" actually served as the proper cancellation notice for purposes of the 10-day notice requirement contained

---

[2] This includes an assumption that MCL 500.3020(1)(b) does not require the mailing of a separate, discreet notice of cancellation.

in the insurance policy. In sum, the trial court did not err in granting summary disposition in favor of plaintiff in regard to the issue of whether the insurance policy remained in effect at the time of the motor vehicle accident; plaintiff remained covered by the policy when she was injured in the accident.

Affirmed. Having fully prevailed on appeal, plaintiff is awarded taxable costs pursuant to MCR 7.219.


/s/ David H. Sawyer
/s/ William B. Murphy
/s/ Amy Ronayne Krause