*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RAHANNIE TACKOOR,

        Plaintiff-Appellee,

v

DUNCAN WILLIAM WHEELOCK and
WILLIAM H. WHEELOCK,

        Defendants,

and

ESURANCE PROPERTY AND CASUALTY
INSURANCE COMPANY, also known as
ESSURANCE PROPERTY AND CASUALTY
INSURANCE COMPANY,

        Defendant-Appellant.

UNPUBLISHED
March 3, 2020

No. 345854
Wayne Circuit Court
LC No. 17-017445-NI

Before: METER, P.J., and FORT HOOD and REDFORD, JJ.

PER CURIAM.

Defendant, Esurance Property and Casualty Insurance Company (Esurance), appeals by leave granted[1] the trial court's order denying its motion for summary disposition brought under MCR 2.116(C)(10).[2] We reverse.

---

[1] *Tackoor v Wheelock*, unpublished order of the Court of Appeals, entered February 21, 2019 (Docket No. 345854).

[2] The trial court dismissed defendants Duncan William Wheelock and William H. Wheelock by stipulated order.

-1-

## I. FACTS

This no-fault action arose from a November 17, 2017 motor vehicle accident in which defendant Duncan Wheelock collided with plaintiff causing her injuries as she drove her recently acquired 2007 Ford Fusion, a gift from her paternal grandfather, Ted Williams, on October 31, 2017. The day Williams gave her his car, plaintiff filed an application for title with the Michigan Secretary of State and transferred the license plate. Williams and plaintiff validly executed an assignment of title for the subject vehicle naming plaintiff as the owner and registrant on October 31, 2017. Plaintiff resided alone in Lansing, Michigan and Williams resided in Macomb, Michigan.

Williams purchased the vehicle during March 2017, and he insured it with a no-fault insurance policy issued by Esurance. Williams obtained a six-month renewal of his insurance policy with an October 28, 2017 effective date. His policy listed three motor vehicles including the one he gave to plaintiff three days later. At the time of her accident, plaintiff had not obtained her own insurance on the vehicle despite being the sole owner for over two weeks. She testified that she simply had not gotten around to it. Neither she nor Williams notified Esurance of the change of ownership and registration of the vehicle.

Williams's insurance policy contained standard terms and conditions. The policy covered Williams and his household as defined under the terms of the policy. The policy defined the terms "you" and "your" as the named insured on the Declarations page and his spouse if a resident of Williams's "household." The policy defined "Family member" as, "Any person related to 'you' by blood, marriage, or adoption who is a resident of 'your' 'household';" and " 'Your' ward or foster child who resides in 'your' 'household'." Williams's policy defined the term "Household" as follows:

> "Household" consists of "you", a "family member", and any domestic partners, unrelated roomers, boarders, live-in employees, and other people who are not related to "you", who live together in the same housing unit. A housing unit includes a house . . . located at the address listed in "your" Declarations page.

The policy also defined the term "covered auto" as, "Any vehicle identified on 'your' Declarations page." Williams's policy's declaration page identified him as the named insured, his Macomb home address, and identified the Ford Focus as one of three insured vehicles. The policy defined the term "Owner" as a person who "Holds the legal title to the motor vehicle . . ." and "Has the immediate right of possession of the motor vehicle under an installment sales contract; or" rents the vehicle under a lease for more than 30 days. The policy defined the term "Insured" as, " 'You' or any 'family member' . . . ."

The policy's termination provision permitted Esurance to cancel the policy by giving notice of cancellation by first-class mail or delivery to the named insured. The policy, however, specifically provided that it automatically terminated:

> If a "covered auto" is sold, assigned, gifted or transferred to anyone other than a "family member", the insurance "we" provide for that "auto" shall automatically terminate at the time it is sold, assigned, gifted or transferred.

Plaintiff never lived with Williams so she did not qualify as a family member or a member of his household as defined by the policy. She was single and lived alone on the date of the accident and did not own any other vehicle. Plaintiff never paid any money to defendant and the Esurance policy on the vehicle named only Williams as the insured. Nonetheless, plaintiff believed herself insured under Williams's policy. Plaintiff admitted at her deposition, however, that she never personally procured insurance for the vehicle through defendant or any other insurance carrier.

Esurance denied plaintiff's claims for personal protection insurance (PIP) benefits and uninsured motorist benefits. Plaintiff sued. The parties conducted discovery and Esurance filed a motion for summary disposition under MCR 2.116(C)(10) on the grounds that Williams's gift of the car to plaintiff automatically terminated the insurance policy coverage for that vehicle under the terms of the policy, he had no insurable interest in the vehicle at the time of the accident, and MCL 500.3113(b) barred plaintiff from recovering no-fault benefits as an uninsured owner of the vehicle. Plaintiff argued that defendant failed to cancel the policy because it did not provide notice as required under MCL 500.3224, resulting in the policy on the vehicle being in force at the time of her accident. She contended that she was not an uninsured motorist because Williams insured the vehicle through his policy, and even though he lacked an insurable interest in the vehicle, Esurance could not cancel the policy on that basis. The trial court denied the motion because:

> [Williams] did have an ownership interest when he insured the vehicle and the only way that could've ceased was when he either notified [Esurance] or within the timeframe—
>
> * * *
>
> . . . even if he notified [Esurance] on the 31st, that policy still would've been in fact [sic] for 20 days. The fact of the matter remains that, taking the evidence in a light most favorable to the nonmoving party, the Court feels that there is a question of fact here. So, I'm going to deny the summary disposition on those basis [sic].

## II. STANDARD OF REVIEW

We review de novo a trial court's decision regarding a motion for summary disposition. *Old Kent Bank v Kal Kustom, Inc*, 255 Mich App 524, 528; 660 NW2d 384 (2003). We also review de novo issues of statutory interpretation. *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012). We review de novo the interpretation of an insurance contract just like any other contract. *Healing Place at North Oakland Med Ctr v Allstate Ins Co*, 277 Mich App 51, 55; 744 NW2d 174 (2007). We "look at the language of the insurance policy and interpret its terms in accordance with the principles of contract construction. Where there is no ambiguity, an insurance contract must be enforced as written in accordance with its terms." *Allstate Ins Co v Muszynski*, 253 Mich App 138, 141; 655 NW2d 260 (2002) (citation omitted). A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual support of a claim and summary disposition is appropriate when no genuine issue concerning any material fact exists. *Universal Underwriters Group v Allstate Ins Co*, 246 Mich App 713, 720; 635 NW2d 52 (2001). When deciding a motion for summary disposition pursuant to MCR 2.116(C)(10), we consider all

pleadings, affidavits, depositions, and other documentary evidence in the light most favorable to the nonmoving party. *Cowles v Bank West*, 476 Mich 1, 32; 719 NW2d 94 (2006).

## III. ANALYSIS

Esurance argues that the trial court erred in denying its motion for summary disposition because coverage on plaintiff's vehicle automatically terminated on the date that Williams gifted it to plaintiff pursuant to the policy's express language. We agree.

"[I]nsurance policies are subject to the same contract construction principles that apply to any other species of contract." *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005). "[U]nless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written." *Id*. When interpreting a contract, words are to be given their "plain and ordinary meaning." *Id*. at 464. Similarly, "[a]ny terms not defined in the contract should be given their plain and ordinary meaning, which may be determined by consulting dictionaries." *McGrath v Allstate Ins Co*, 290 Mich App 434, 439; 802 NW2d 619 (2010) (citation omitted). If an ambiguity exists in an insurance contract, then it should be construed against the insurer. *Id*. "An insurance contract is ambiguous if its provisions are subject to more than one meaning." *Id*. "An insurance contract is not ambiguous merely because a term is not defined in the contract." *Id*. (citation omitted). Courts may not hold liable an insurance company for a risk that it did not assume. *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 567; 489 NW2d 431 (1992).

Michigan's Insurance Code of 1956, MCL 500.100 *et seq*., prescribes in Chapter 30, respecting casualty insurance contracts, the manner in which an insured or an insurer may cancel an insurance policy. MCL 500.3020 provides in relevant part:

(1) A policy of casualty insurance, . . . including all classes of motor vehicle coverage, shall not be issued or delivered in this state by an insurer authorized to do business in this state for which a premium or advance assessment is charged, unless the policy contains the following provisions:

(a) That the policy may be canceled at any time at the request of the insured, in which case the insurer shall refund the excess of paid premium or assessment above the pro rata rates for the expired time . . . .

(b) Except as otherwise provided in subdivision (d), that the policy may be canceled at any time by the insurer by mailing to the insured at the insured's address last known to the insurer or an authorized agent of the insurer, with postage fully prepaid, a not less than 10 days' written notice of cancellation with or without tender of the excess of paid premium or assessment above the pro rata premium for the expired time.

\* \* \*

(5) Cancellation as prescribed in this section is without prejudice to any claim originating before the cancellation. The mailing of notice is prima facie proof of notice. Delivery of written notice is equivalent to mailing.

(6) A notice of cancellation, including a cancellation notice under section 3224, shall be accompanied by a statement that the insured shall not operate or permit the operation of the vehicle to which notice of cancellation is applicable, or operate any other vehicle, unless the vehicle is insured as required by law.

Chapter 32 of the Insurance Code of 1956, MCL 500.3204 through MCL 500.3262, limits the circumstances in which an insurer may cancel an automobile insurance policy, including nonpayment of premiums, the insurer's determination that the risk is unacceptable, or suspension of an insured's, operator's, or household member's driver's license. MCL 500.3224 specifies notice requirements for an insurer's cancellation as follows:

(1) The cancellation of a policy of insurance within the 55-day period enumerated in subdivision (a) of section 3220 shall not be subject to appeal by the insured. Failure to disclose the cancellation by any insured upon any application for insurance shall not be grounds to deny coverage on the basis of fraud by an insurer who may have accepted the risk thereafter.

(2) For the provisions of this chapter only, no cancellation shall be effective unless a written notice of cancellation is mailed by certified mail, return receipt requested, to the insured at the last address known to the insurer either through its records, the personal records of the agent who wrote the policy, or as supplied by the insured.

(3) The notice shall be mailed at least 20 days prior to the effective date of cancellation. For the purpose of this chapter only, delivery of such written notice by the insurer shall be the equivalent of mailing. The notice shall contain the reasons for the cancellation and shall state in bold type that the insured has the statutory right within 7 days from the date of mailing to appeal to the department. The commissioner shall approve the form of the cancellation notice.

MCL 500.3020 does not preclude parties from contractually agreeing to the automatic termination of an automobile insurance policy upon the sale, assignment, gifting, or transfer of an insured vehicle. The statute applies to situations in which termination is not automatic but optional and done by the insured or the insurer. See *Wynn v Farmers Ins Group*, 98 Mich App 93, 97; 296 NW2d 197 (1980) (concluding that MCL 500.3020 did not apply in the circumstance of an automobile policy that automatically terminated); see also *Bek v Zimmerman*, 285 Mich 224; 280 NW 741 (1938) (holding inapplicable the predecessor statute to MCL 500.3020, which had similar cancellation notice requirement, because the statute could not be stretched to cover a situation where liability under the policy automatically suspended pursuant to the terms of the insurance

contract). Similarly, MCL 500.3224 does not preclude parties from contractually agreeing to the automatic termination of an automobile insurance policy upon the sale, assignment, gifting, or transfer of an insured vehicle.

In *McCormic v Auto Club Ins Ass'n*, 202 Mich App 233, 239-240; 507 NW2d 741 (1993), this Court reversed the trial court's denial of summary disposition for the insurer because the policy at issue terminated automatically pursuant to the terms of the insurance contract. This Court concluded that, under the circumstances, because the policy automatically terminated, the insurer had no obligation to provide the insured notice of cancellation. *Id*. at 240. This Court held that no issue of fact existed entitling the defendant to summary disposition as a matter of law. *Id*.[3]

In this case, the policy provision on which Esurance relies unambiguously provided for automatic termination upon the insured's sale, assignment, gifting, or transfer of a vehicle covered under the policy. That provision did not require Esurance to do anything. Rather, upon the occurrence of any of the specified events by the insured, the policy automatically terminated. The specified events that could trigger automatic termination were acts which Williams alone controlled and in which he alone could engage. When Williams contracted with Esurance, he agreed to the unambiguous contract terms that specified the automatic consequence of termination of the coverage for the vehicle covered under the policy if he chose to sell, assign, gift, or transfer a covered vehicle. Automatic termination under the terms of the subject policy is not the same as cancellation by the insured or the insurer. Consequently, neither MCL 500.3020 nor MCL 500.3224 applied in this case because Williams chose to gift the car to plaintiff and he transferred title and registration of the covered vehicle to her which triggered the automatic termination. Plaintiff lacked family member and household member status as unambiguously defined by the policy. The insurance coverage on plaintiff's car under the Esurance policy issued to Williams terminated upon Williams's gift of it to her. Esurance cannot be held liable for a risk that it did not assume, i.e., insuring a vehicle that its insured sold, assigned, gifted, or transferred. Moreover, Esurance had no obligation to provide notice of the automatic termination.

---

[3] The issue presented in this case is analogous to the insuring of employees under group policies and the automatic termination of such insurance coverage when an employee leaves employment with the employer. Our Supreme Court explained long ago in *Hawthorne v Metropolitan Life Ins Co*, 285 Mich 329, 335-336; 280 NW 777 (1938):

> Group insurance policies are issued to the employer to insure employees. One who is not an employee is not insurable. The employee is entitled to coverage under the certificate issued to him only while he remains in the employ of the employer and upon payment at the beginning of each month of the premium upon the insurance policy. No recovery may be had upon an insurance policy for the death of one who has been an employee of the insured under a group policy after the termination of his employment, except in strict compliance with the terms of the policy. The very purpose of the group insurance is to safeguard or provide for employees. It would be unreasonable to conclude the policy would inure to the benefit of those who have ceased to be employees. The courts have repeatedly given effect to provisions in policies providing for automatic discontinuance. [Citations omitted.]

Plaintiff's argument that *Iqbal v Bristol West Ins Group*, 278 Mich App 31; 748 NW2d 574 (2008), supports the trial court's ruling lacks merit. In *Iqbal*, an insurance policy had been procured for the vehicle by the plaintiff's brother and the policy had not terminated automatically as here. The insurance coverage was in effect on the vehicle for purposes of MCL 500.3113(b). Here, Williams's policy's coverage for the subject vehicle terminated under the express terms of the policy. Therefore, the security required by MCL 500.3101(1) was not in effect for purposes of MCL 500.3113(b).

This case is also distinguishable from *Dye v Esurance*, 504 Mich 167; 934 NW2d 674 (2019). In *Dye*, our Supreme Court held that an owner or registrant is not required to personally obtain no-fault insurance for his or her motor vehicle to avoid the statutory bar to PIP benefits under MCL 500.3101(1) and MCL 500.3113(b) if someone else has insured the motor vehicle so that a no-fault policy has been maintained and remained "in effect" on the motor vehicle at the time of the accident. *Id*. at 172-174. In *Dye*, after registering his son's motor vehicle in his son's name pursuant to a power of attorney to act on his behalf at the secretary of state, a father procured insurance for the motor vehicle. His son had been deployed as a member of the National Guard to Afghanistan. Esurance issued a policy on the motor vehicle. The policy remained in effect and insured the vehicle after the son returned from his overseas deployment. Dye suffered personal injury in an accident involving the insured vehicle which occurred after his return to Michigan. *Id*. at 174-175. Unlike this case, in *Dye*, the policy had not terminated because the insured sold, assigned, gifted, or transferred the subject motor vehicle. Rather, the policy insuring the vehicle remained in full force and effect. In this case, Williams's gift terminated the policy and plaintiff's vehicle lacked the security required under MCL 500.3101(1), and therefore, the statutory bar to PIP benefits under MCL 500.3113(b) applied to plaintiff precluding her from receiving benefits from Esurance.

As in *McCormic*, no genuine issue of material fact exists and Esurance is entitled to summary disposition as a matter of law. The trial court erred by ruling that an issue of fact precluded granting Esurance summary disposition. Because our ruling in this regard is dispositive of this appeal, we decline to consider Esurance's additional issues on appeal.

Reversed and remanded for entry of summary disposition in favor of Esurance. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Karen M. Fort Hood
/s/ James Robert Redford

-7-